**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 08-4345**

———————

UNITED STATES OF AMERICA,

                Plaintiff - Appellee,

     v.

RUBEN ORTIZ BARRAZA, a/k/a Ruben Barraza-Ortiz,

                Defendant - Appellant.

———————

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. Frank D. Whitney, District Judge. (3:07-cr-00079-FDW-DCK-6)

———————

Submitted: January 28, 2010      Decided: February 19, 2010

———————

Before MICHAEL, KING, and AGEE, Circuit Judges.

———————

Affirmed by unpublished per curiam opinion.

———————

Denzil H. Forrester, Charlotte, North Carolina, for Appellant. Edward R. Ryan, Acting United States Attorney, Charlotte, North Carolina; Amy E. Ray, Assistant United States Attorney, Asheville, North Carolina, for Appellee.

———————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Ruben Ortiz Barraza was convicted by a jury of conspiracy to possess with intent to distribute at least 100 kilograms of marijuana, 21 U.S.C.A. §§ 846, 841(b)(1)(B) (West 1999 & Supp. 2009) (Count One), and possession with intent to distribute of at least 100 kilograms of marijuana, 21 U.S.C.A. § 841(a), (b)(1(B), 18 U.S.C. § 18 (2006). In this appeal, Barraza challenges his conviction and sentence, and the district court's denial of his motion for a new trial under Fed. R. Crim. P. 33 based on newly discovered evidence. We affirm.

The government's trial evidence showed that in January 2007 a tractor-trailer truck was stopped in Mississippi because it lacked a visible Department of Transportation number. Inspection revealed that it contained rotting fruit and $1.2 million in cash in several suitcases. The driver, Benito Delagarza, cooperated and made two recorded telephone calls to his boss, Ruben Barraza, who was listed on documents in the truck's cab as the owner of the trucking company. Barraza agreed to send money so that Delagarza could return to Texas and said he did not know "how much" was in the truck, but that Delagarza should get a receipt for it. Delagarza later recorded two conversations with co-defendant Ruben Garcia in Texas, during which they discussed preparations for two more trips using a blue truck and transporting 2000 "pesos" to Charlotte,

2

North Carolina. One of the Drug Enforcement Administration (DEA) agents who conducted the investigation in Texas testified that the defendants used the term "pesos" to mean "pounds."

On March 19, 2007, Delagarza recorded both audio and video tapes of a truck being loaded at a warehouse leased by Barraza. The lights in the warehouse were dimmed while packages were placed in the truck, then the lights were turned back on and a forklift was used to fill the truck with pallets of produce. Co-defendants Ruben Barraza, Garcia, Edgar Barraza, and Juan Garza were present. Barraza operated the forklift.

After Delagarza drove the truck away from the warehouse, federal agents kept the truck under surveillance and unloaded produce and more than 2000 pounds of marijuana from it some distance away. The marijuana was flown separately to North Carolina, while Delagarza drove the truck to Charlotte. When Delagarza reached Charlotte, the agents reloaded the marijuana onto the truck. Delagarza called Barraza on March 22, 2007, and was told to go to a warehouse leased by co-defendant Patrick Schwenke. After the marijuana was unloaded by Schwenke, Juan Sanchez-Solorzano, and others, they were arrested, as was co-defendant Sharu Bey, who arrived to buy marijuana. Unaware of the arrests, Garcia and Garza sent a moneygram to Delagarza the same day.

3

In April and in late May 2007, Delagarza drove loads of marijuana to Indianapolis, Indiana, and to Durham, North Carolina, as directed by Barraza and Garcia. Ruben Barraza and Garcia were arrested in June 2007. Edgar Barraza became a fugitive. Barraza, Garcia, and Bey went to trial and were convicted on all counts. Garza, Schwenke, Sanchez-Solorzano, and two other co-defendants entered guilty pleas; however, only Sanchez-Solorzano testified at the trial. Delagarza was expected to testify, but disappeared shortly before the trial began.

Before trial, the government moved to admit tape recordings of the monitored conversations between Delagarza and defendants Barraza and Garcia. The district court granted the motion, finding that the defendants' inability to cross-examine Delagarza did not violate the Confrontation Clause because the recorded conversations were among co-conspirators. The court also held that Delagarza's statements were not hearsay because they were not offered for "the truth of the matter asserted," Fed. R. Evid. 801, but to provide a context for the defendants' statements. The government requested a limiting instruction, to which the court agreed.

During the trial, Barraza and Garcia expressed frustration at Delagarza's absence. Garcia's attorney asked the federal agent in charge of the Charlotte investigation if he

4

knew where Delagarza was, although Barraza's attorney did not agree that the question should be asked. At the close of the government's evidence, Garcia's attorney informed the court that he intended to request a missing witness instruction; however, he later decided not to do so. Garcia did point out in his closing argument that neither Delagarza nor Schwenke had testified.

At Barraza's sentencing hearing, while objecting to the drug quantity attributed to him, his attorney brought to the court's attention a page from Garza's presentence report which stated that Garza initially lied about the extent of his involvement in the conspiracy. The district court determined that the information was not relevant to sentencing, but could have been used to impeach Garza's credibility had he testified at trial. The district court found that Barraza was responsible for more than 4000 kilograms of marijuana, and was a leader in the conspiracy. The court imposed a within-guideline sentence of 290 months imprisonment.

Shortly after judgment was entered, Barraza filed a motion for new trial, claiming that the information in Garza's presentence report was newly discovered evidence which contradicted the testimony of DEA Agent Patina that Barraza was connected to the Charlotte drug traffickers. Barraza alleged that his Sixth Amendment Confrontation Clause right was violated

5

because Garza did not testify at trial and Patina and other federal agents were permitted to testify about information they obtained from "absentee witnesses." Barraza also claimed that a chart of telephone calls and contacts based on information obtained from the defendants' seized phones and introduced into evidence through Agent Patina showed a connection between Barraza and the Charlotte defendants that was dependent on information from Garza. Barraza argued that a new trial was necessary where both Garza and Patina would testify.

The government responded that the page from Garza's presentence report was not newly discovered evidence, and produced copies of two pretrial emails from the prosecutor to Barraza's attorney describing Garza's initial claim that he was involved only with the Charlotte shipment and his subsequent admission that he was involved with the shipments to Indianapolis and Durham with both Barraza and Garcia, but would not testify about those shipments. The district court denied the motion for new trial, finding that the allegedly new evidence was not newly discovered and that testimony by Garza at a new trial would be impeaching at best and probably damaging to Barraza.

On appeal, Barraza first contends that the Confrontation Clause, which protects a criminal defendant's right "to be confronted with the witnesses against him," see

6

U.S. Const. amend. VI, was violated in several respects. Barraza argues that the district court's "missing witness" instruction should have been limited to co-defendant Garcia. "It is well settled that the rule regarding missing witness instructions is that if a party has it peculiarly within his [or her] power to produce witnesses whose testimony would elucidate the transaction, the fact that he [or she] does not do it creates the presumption that the testimony, if produced, would be unfavorable." United States v. Brooks, 928 F.2d 1403, 1412 (4th Cir. 1991) (internal quotation marks omitted). Barraza's argument is without merit because the district court did not give a missing witness instruction and Barraza's attorney agreed that one would not be warranted. In addition, Barraza has produced no evidence that Delagarza was accessible only to the government, or any other reason that he could not have subpoenaed Delagarza to testify at trial.

Barraza's real claim appears to be that he was prejudiced by Garcia's question to Agent Patina whether he knew where Delagarza was, which allowed Patina to testify that Delagarza had disappeared, and permitted the inference that Delagarza was afraid to testify. In a sidebar conference during Garcia's cross examination of Patina, the district court informed all defense counsel that Garcia was free to ask about Delagarza, even if the other defendants disagreed with that

7

trial strategy. The district court did not abuse its discretion in permitting Garcia to inquire about Delagarza's absence.[1]

Barraza also apparently believes that the district court should have given a limiting instruction excluding him from Patina's testimony that Juan Garza had pled guilty and agreed to testify against Barraza. He contends that Patina mistakenly said Garza agreed to testify against Barraza instead of against Garcia, given that it was Garcia who had opened the door to Patina's testimony. However, Patina provided the information on redirect examination after Barraza asked him about two charts of telephone calls that he had prepared, only one of which included Garza. Barraza himself thus opened the door to admission of the information. We discern no error on the part of the district court.

Barraza further contests the admission of his recorded conversations with Delagarza on the ground that Delagarza was not present for cross-examination. He acknowledges that his objection at trial was that the voice on the tape was not him.[2] He now claims that a constitutional error occurred because he believes that he may benefit from the Supreme Court's decisions

---

[1] The court struck Patina's testimony that witnesses sometimes fail to appear because they are fearful.

[2] Barraza's attorney maintained that the tape had only one voice on it, not two as the government and translator believed.

8

in <u>Giles v. California</u>, 128 S. Ct. 2678 (2008), and <u>Melendez-Diaz v. Massachusetts</u>, 129 S. Ct. 2527 (2009). Both <u>Giles</u> and <u>Melendez-Diaz</u> deal with testimonial hearsay. Barraza's reliance on these cases is inapposite because Delagarza's recorded statements were not hearsay as they were not offered to prove the truth of the matter asserted, but to provide a context for Barraza's statements.

Barraza also relies on <u>Crawford v. Washington</u>, 541 U.S. 36, 68 (2004) (holding that the Sixth Amendment requires that a witness be unavailable and that the defendant have had a prior opportunity for cross-examination before testimonial hearsay evidence may be admitted). This claim is similarly unavailing because <u>Crawford</u> applies only to testimonial hearsay statements and Delagarza's statements were neither hearsay nor testimonial. <u>Crawford</u> recognized that statements made in furtherance of a conspiracy are, by their nature, not testimonial. <u>Id.</u> at 56. Therefore, tape-recorded statements between a defendant and a confidential informant are admissible because (1) the defendant's own statements are neither hearsay nor made in anticipation of a criminal prosecution, and (2) the informant's statements are not hearsay (and thus not covered by <u>Crawford</u>) because they are offered at trial only to provide context for the defendant's statements and not for the truth of the matter asserted. See <u>United States v. Tolliver</u>, 454 F.3d

9

660, 665-66 (7th Cir. 2006). Consequently, in this case, the tape-recorded conversations between Barraza and Delagarza were correctly admitted despite Barraza's inability to cross-examine Delagarza.

Next, Barraza argues that the district court clearly erred in finding him to be a leader in the conspiracy. U.S. Sentencing Guidelines Manual § 3B1.1(a) (2008). The district court's determination that the defendant had a leadership role in the offense is a factual finding reviewed for clear error. United States v. Kellam, 568 F.3d 125, 147-48 (4th Cir. 2009). A four-level increase is provided under § 3B1.1(a) for a defendant who is an organizer or leader of an offense which involved more than five participants or was otherwise extensive. To qualify, the defendant must have been the organizer or leader of "one or more other participants." USSG § 3B1.1 cmt. n.2. Factors to be considered include:

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

USSG § 3B1.1 cmt. n.4.

Here, the evidence did not clearly establish the relative positions of Barraza and Garcia within the conspiracy. While Delagarza initially identified Barraza as his boss, he

10

apparently received instructions from both Barraza and Garcia relating to the actual delivery of marijuana on various trips he made. However, Barraza ostensibly owned the trucking company for which Delagarza was driving when he was initially stopped in Mississippi with $1.2 million in his truck. Barraza leased the warehouse in Texas where the 2000 pounds of marijuana was loaded for shipment to Charlotte. Barraza operated the forklift to load produce onto the truck, which his attorney argued showed that he was a worker, not a leader. However, at sentencing, having viewed the videotape of the loading, the district court determined that Barraza appeared to be directing the others present as well as operating the forklift. Barraza argues that Garcia was the leader of the conspiracy, but does not offer concrete evidence of that, nor does he refute any of the information indicating that he had a more authoritative position. On the evidence before the district court, we conclude that the court did not clearly err in deciding that Barraza had a leadership role in the conspiracy.

Finally, Barraza claims that the district court abused its discretion in finding that he had not produced new evidence warranting a new trial. A motion for new trial under Rule 33 may be filed up to three years after the verdict. Fed. R. Crim. P. 33(b). The district court's order granting or denying a motion for new trial under Rule 33 is reviewed for abuse of

discretion. United States v. Fulcher, 250 F.3d 244, 249 (4th Cir. 2001). To receive a new trial based on newly discovered evidence, a defendant must demonstrate: (1) the evidence is newly discovered; (2) he has been diligent in uncovering it; (3) it is not merely cumulative or impeaching; (4) it is material to the issues involved; and (5) it would probably produce an acquittal. Id.

Barraza's new trial motion was filed almost a year after he was convicted. He claimed that information in Garza's presentence report that Garza did not cooperate with the government constituted newly discovered evidence which contradicted Agent Patina's testimony that Garza did cooperate. In response, the government produced evidence that, before Barraza's trial, it had informed his attorney about Garza's pre-trial debriefing, including his initial denial that he was involved in the conspiracy apart from the Charlotte shipment, his subsequent admission that he had participated further, and his refusal to testify. The information in Garza's presentence report was thus not new to Barraza's defense attorney. Because Barraza failed to make a threshold showing of newly discovered evidence, the district court did not abuse its discretion in denying the motion for new trial.

We therefore affirm the judgment of the district court. We dispense with oral argument because the facts and

12

legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED