Cynthia J. ESTES, Appellant,

v.

STATE of Alaska, Appellee.

No. A–10316.

Court of Appeals of Alaska.

March 4, 2011.

Dan S. Bair, Assistant Public Advocate, Appeals & Statewide Defense Section, and Rachel Levitt, Public Advocate, Anchorage, for the Appellant.

Timothy W. Terrell, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Daniel S. Sullivan, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and BOLGER, Judges.

*OPINION*

MANNHEIMER, Judge.

Cynthia J. Estes and her husband, Richard Deremer, were suspected of killing Estes's cousin, David McKinney, and stealing his supplies of prescription pain medications. During the investigation of this homicide, the state troopers enlisted Deremer's cousin, Jason Chew, to engage Estes in a monitored conversation about the homicide. During this conversation, Chew attempted to draw out Estes by telling her that he had spoken with Deremer about the homicide, and that Deremer had described how he and Estes plotted to kill McKinney.

Despite Chew's repeated assertions that Deremer had implicated Estes in the homicide, Estes staunchly denied that she had had anything to do with planning or committing the crime. She admitted that she had driven Deremer to McKinney's house, but she declared that she had no idea that Deremer intended to commit murder. Estes told Chew that she thought Deremer was merely going to confront McKinney about an ongoing family dispute.

(Apparently, McKinney suspected that Estes had been stealing drugs from him. McKinney had confronted Estes about this, and he had allegedly threatened Estes and her family.)

Estes admitted that she almost immediately found out that Deremer had murdered McKinney—because, when she came back to McKinney's house to pick Deremer up, Deremer told her to come inside the house, and then it become obvious what Deremer had done. Estes also conceded that she assisted in the theft of McKinney's prescription pain medications by retrieving a slip of paper from McKinney's wallet—a paper that contained the combination to the safe where McKinney stored his medications—and by showing Deremer where the safe was.

After Estes had this conversation with Chew, she was interviewed by two state trooper investigators who used the same stratagem—telling Estes that Deremer had confessed to the homicide, and that Deremer had described how he and Estes planned the crime together. During this conversation

with the state troopers, Estes eventually admitted that, when she drove Deremer to McKinney's house, she knew that Deremer intended to shoot McKinney—although she told the investigators that she did not want to believe that he would really go through with it.

Estes also again admitted that, after McKinney was shot and killed, she entered the house and searched McKinney's wallet for the piece of paper containing the combination to the floor safe where McKinney stored his pain medications. However, Estes claimed that she had no intent to steal these medications when she drove Deremer to McKinney's house—that she made this decision only after McKinney was already dead.

The primary questions presented in this appeal arise from the fact that, at Estes's murder trial, the State sought permission to introduce the contents of Estes's monitored telephone conversation with Chew and her later interview with the state troopers. Estes's attorney objected, arguing that the introduction of this evidence would violate Estes's Sixth Amendment right of confrontation as construed in *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

Specifically, the defense attorney pointed out that, during these two conversations, Chew and the state troopers referred to out-of-court statements purportedly made by Estes's husband, Deremer. In these purported statements, Deremer admitted his guilt of the murder, but he also incriminated Estes.

Estes's attorney argued that Deremer's out-of-court statements were "testimonial hearsay" for purposes of the confrontation clause, and therefore any reference to these statements would violate Estes's right to confrontation—since Deremer (who was tried separately for the murder) was not available as a witness at Estes's trial, and since Estes had had no prior opportunity to cross-examine Deremer concerning these purported statements.

The trial judge, Superior Court Judge Eric Smith, concluded that Estes's confrontation clause objection was meritless because, even

if Deremer had in fact made the statements attributed to him by Chew and by the trooper investigators, the State was not offering Deremer's statements for a hearsay purpose.

*Why we conclude that the introduction of this evidence did not violate Estes's Sixth Amendment right of confrontation*

Alaska Evidence Rule 801(c) defines "hearsay" as a statement (*i.e.,* an assertion of fact [1] ) that is "offered in evidence to prove the truth of the matter asserted [in the statement]."

In Estes's case, the State wished to introduce two recorded interviews with Estes—the surreptitiously recorded conversation with Chew, and the openly recorded interview with the state troopers. Both of these interviews contained references to out-of-court statements purportedly made by Estes's husband, Deremer—statements implicating Estes in the planning and commission of the murder.

But this evidence was not hearsay, because the State did not offer this evidence as proof of the matters asserted in the statements attributed to Deremer. Rather, Chew's assertions about what Deremer said, and the troopers' assertions about what Deremer said, were offered to provide the foundation or context for understanding the statements that *Estes* made when she *responded* to these assertions about what Deremer purportedly said.

As Judge Smith recognized, the probative aspect of this evidence was not that Deremer had said these things (if, in fact, Deremer did say these things). Rather, the probative aspect of this evidence lay in the fact that Estes *was told* that Deremer had said these things, and in how she responded to these assertions.

In other words, it was important for the jury to be apprised of how Chew and the troopers described or characterized Deremer's purported statements when they spoke to Estes—so that the jury could understand what Estes meant when she either conceded or denied the truth of these various asser-

---

1. Alaska Evidence Rule 801(a).

tions about the planning and commission of the murder. As Judge Smith explained, "the statements [purportedly made] by Mr. Deremer are not coming in for their truth, but in order for the jury to understand Ms. Estes's reaction to [these purported statements]."

We have addressed this same issue in the past. For example, in *Linne v. State*, 674 P.2d 1345, 1356 n. 8 (Alaska App.1983), this Court held that an interview between a police officer and the defendant was properly admitted into evidence, even though, during this interview, the officer asked the defendant a number of questions based on hypothetical facts. This Court concluded that the content of the officer's questions was not being used to prove the truth of the matters asserted in those questions. "The significance of the interview was not in [the officer's] questions, but rather in [the defendant's] responses, many of which were highly incriminating when viewed in light of other evidence presented in the case." *Ibid.* We also noted that it "would not have been realistic" to exclude the officer's questions because, without them, the jury would have been unable to make sense of the defendant's responses. *Ibid.*

Similarly, in *Lipscomb v. State*, 700 P.2d 1298, 1304–05 (Alaska App.1985), this Court rejected a robbery defendant's argument that the hearsay rule barred admission of the assertions of fact contained in questions posed by a police detective who interviewed the defendant. The detective's questions included references to statements made by the victim, who died before trial, implicating Lipscomb in the robbery. This Court held that the detective's questions were not hearsay: they were not introduced as proof of the factual assertions contained in the questions, but were rather introduced to provide the context for understanding Lipscomb's answers. *Id.* at 1305. We noted that "Lipscomb's responses, even more so than Linne's, would have been nonsense without the questions eliciting them." *Ibid.*

Returning to the present case, Estes's responses to the questions posed by Chew and by the trooper investigators would have made little sense unless the jurors were apprised of the content of those questions—in particular, the way in which Chew and the investigators referred to, and characterized, Deremer's purported out-of-court statements. Many of Estes's responses were either brief statements of agreement or brief denials. These responses would be unintelligible unless one knew the content of the questions that prompted these responses.

In short, to the extent that Chew's questions to Estes and the troopers' questions to Estes contained references to Deremer's purported out-of-court statements, those references were offered for a non-hearsay purpose.

■ And because the evidence of Deremer's purported out-of-court statements was offered for a non-hearsay purpose, the introduction of that evidence did not implicate Estes's Sixth Amendment right of confrontation. As the United States Supreme Court explained in *Crawford v. Washington*, the Sixth Amendment's confrontation clause bars evidence that is *both* "testimonial" and "hearsay", but it does not bar testimonial evidence if that evidence is not hearsay: "The [Confrontation] Clause … does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Crawford*, 541 U.S. at 59 n. 9, 124 S.Ct. at 1369.

We note that, in the years since the *Crawford* decision was issued, the federal circuit courts of appeal have repeatedly held that when out-of-court statements are introduced, not for proof of the matters asserted, but for the purpose of providing the context necessary for understanding admissible evidence, the admission of those out-of-court statements does not violate the confrontation clause.[2]

---

2. *See United States v. Walter*, 434 F.3d 30, 35 (1st Cir.2006) ("*Crawford* … does not call into question this Court's precedents holding that statements introduced solely to place a defendant's admissions into context are not hearsay, and as such, do not run afoul of the Confrontation Clause."); *United States v. Dominguez*, 280 Fed. Appx. 81, 84 (2nd Cir.2008); *United States v. Fleming*, 287 Fed.Appx. 150, 153–54 (3rd Cir. 2008); *United States v. Barraza*, 365 Fed.Appx. 526, 530 (4th Cir.2010); *United States v. Rios*, 298 Fed.Appx. 312, 314 (5th Cir.2008); *United*

For these reasons, we hold that Judge Smith properly rejected Estes's confrontation clause objection to the evidence of Estes's conversations with Chew and with the state trooper investigators. It is true that when Chew and the troopers spoke with Estes, they repeatedly referred to statements purportedly made by Deremer. But these statements were relevant for a valid non-hearsay purpose—and, thus, the introduction of this evidence did not violate Estes's Sixth Amendment right of confrontation.

*The related issue of whether this evidence should have been excluded under Alaska Evidence Rule 403*

When Judge Smith considered (and denied) Estes's confrontation clause objection to the challenged evidence, the judge also recognized that Estes had an alternative ground for objecting to this evidence.

Even though the State offered the evidence of Deremer's purported statements for a valid non-hearsay purpose, Judge Smith perceived that, given the nature of this evidence (*i.e.*, statements purportedly made by Estes's husband that incriminated both himself and Estes), there was a danger that the jurors would improperly use this evidence for a hearsay purpose. That is, there was a danger that the jurors would view this evidence as independent proof that (1) Deremer had in fact said these things, and that (2) what Deremer said about Estes's participation in the homicide was true.

Judge Smith concluded that he needed to address this problem under the rubric of Alaska Evidence Rule 403—the rule that allows judges to limit or exclude relevant evidence if that evidence poses a danger that the jury will be led to decide the case on improper grounds:

> *The Court*: [T]he State's not trying to [introduce these references to Deremer's statements] for their truth, and so the question [is] ... essentially [an] Evidence

Rule 403 argument, ... [an argument] that [the evidence] is more prejudicial than probative, given the danger that the jury will attribute truth to those statements even though they're being told not to. Is that a reasonable summary of your position, Mr. [Defense Attorney]? ...

> *Defense Attorney*: Right.

> *The Court*: ... And that's really a [Rule] 403 prejudice-versus-probative [value] analysis. So I will think [further] about that.

The next day, Judge Smith told the defense attorney that he was willing to give the jury a cautionary instruction—instructing the jurors that they were to consider the content of Deremer's purported statements only to the extent that these statements shed light on Estes's responses to Chew and to the troopers:

> *The Court*: The [purported] statements by Mr. Deremer are not coming in for their truth, but in order for the jury to understand Ms. Estes's reaction to them. And so I'm prepared to give the jury an instruction that tells them that they're only to consider the content of Mr. Deremer's statements with respect to Ms. Estes's answers. So if Ms. Estes says "No, I didn't plan it" [when she is confronted with the assertion that Deremer said she *did* plan the homicide], then that's the relevant evidence here. If Ms. Estes says, "Yeah, I agree with him; he went in there and blew the guy's head off", then that's essentially *her* testimony. And so Mr. Deremer's statements are being used to give content to her testimony.... And Mr. [Defense Attorney], I'm going to let you draft the [jury] instruction [that contains this explanation].

In response, the defense attorney drafted the following jury instruction, which Judge Smith later gave to the jurors:

> During the course of the questions asked to Cynthia Estes[,] you heard reference to statements allegedly made by other peo-

*States v. Grooms*, 194 Fed.Appx. 355, 358–360 (6th Cir.2006); *United States v. Bermea–Boone*, 563 F.3d 621, 626 (7th Cir.2009); *United States v. Spencer*, 592 F.3d 866, 879 (8th Cir.2010); *United States v. Moore*, 365 Fed.Appx. 800, 802 (9th Cir.2010); *United States v. Lopez–Medina*, 596 F.3d 716, 735–36 (10th Cir.2010); *United States v. Valdes–Fiallo*, 213 Fed.Appx. 957, 961 (11th Cir.2007).

ple. You are not to accept these statements for their truth. The reliability of these statements has not been determined.

The reason you are hearing these statements is so that you will have some context for the answers given by Ms. Estes. Ms. Estes' answers are the evidence, not the questions or the statements of others contained in the questions.

At the same time, however, the defense attorney preserved an objection that *no* cautionary instruction, no matter how well drafted, could obviate the unfair prejudice of the challenged evidence. Estes renews this argument on appeal.

Estes's primary argument as to why no jury instruction could solve the problem is essentially a re-working of her confrontation clause argument. She reiterates her position that much of the challenged evidence (*i.e.*, many of the references to Deremer's purported out-of-court statements) had no valid non-hearsay purpose—no real relevance other than to prove the matters asserted in Deremer's purported statements. We reject this argument for the reasons explained in the preceding section of this opinion.

Estes's alternative argument is that, despite the cautionary instruction, the jurors inevitably must have concluded that Deremer actually made the incriminating out-of-court statements reported by Chew and the state trooper investigators, and that Deremer's statements were true. Estes points out that the content of Deremer's purported statements conformed in large measure to the State's theory of the case—the theory that Deremer and Estes plotted together to kill McKinney.

Although Estes does not flesh out this argument further, her reasoning appears to be that, because of the congruence between Deremer's out-of-court statements as reported by Chew during his monitored conversation with Estes, and as reported by the state trooper investigators during their subsequent interview with Estes, the jurors would inevitably conclude that Deremer had in fact made these statements, and that the State's theory of the case was derived from Deremer's statements.

But rather than viewing Deremer's purported statements as the cause and the State's theory of the case as the effect, one could validly view things the other way around. When Chew engaged in his monitored conversation with Estes, and when the state troopers later interviewed Estes, they were attempting to draw her out—get her to make self-incriminating statements by having her respond to assertions about her role in the McKinney homicide. The jurors could reasonably conclude that, regardless of what Deremer may *actually* have said (or failed to say) about the homicide, the troopers would want to confront Estes with accusations that conformed to the State's working theory of the case. In other words, the State's theory of the case may well have provided the template for how Deremer's statements would be *reported to Estes* by Chew and by the state troopers.

The cautionary instruction told the jurors that the reports of Deremer's out-of-court statements should not be taken at face value, and that what mattered was the way Estes responded or reacted when she was told of these purported out-of-court statements. We believe that the jurors could understand this concept—understand that the troopers might embellish what they knew about the crime, or might even invent "facts" about the crime, for the purpose of confronting Estes with these purported facts and then seeing how she would respond.

Accordingly, we conclude that Judge Smith did not abuse his discretion when he concluded that the cautionary instruction was an adequate solution to this problem.

■ We also conclude that, even if the cautionary instruction was not an adequate remedy for the potential danger posed by this evidence, the error was harmless. Given the incriminatory statements that Estes herself made, or that she adopted during her conversations with Chew and with the state troopers, any additional incriminatory implications of Deremer's reported out-of-court statements could not have had an appreciable

effect on the jury's verdict.[3]

Estes personally admitted most of the facts of the murder. In particular, Estes ultimately admitted to the troopers that she knew Deremer was going to murder McKinney when she drove him to McKinney's house.

We acknowledge that the evidence was conflicting as to whether Estes helped plan the murder. There was significant evidence that Estes and Deremer planned to kill McKinney—for example, the fact that Estes and Deremer used two-way radios, rather than their cell phones, to communicate with each other during this incident, and the fact that Estes walked right into McKinney's house and straight to his bedroom, where she proceeded to search his wallet for the piece of paper containing the combination to his safe. On the other hand, in her conversations with Chew and with the state troopers, Estes persistently denied that she helped plan the murder, or that she personally wanted Deremer to kill McKinney (even though she drove Deremer to McKinney's house knowing that he intended to murder McKinney).

But the State did not need to prove that Estes participated in the advance planning of the murder. The statute defining accomplice liability, AS 11.16.110(2), declares that vicarious liability for another's conduct can be premised on several different types of conduct: soliciting another person to commit the crime, encouraging or assisting another person in planning the crime, or encouraging or assisting another person in committing the crime.[4]

Here, Estes herself admitted performing an act that assisted Deremer in committing the murder: she drove him to McKinney's house. The only real question was whether, when Estes did so, she acted with the *mens rea* that would establish her liability as an accomplice: that is, whether she acted with the intent to promote or facilitate the homicide.[5]

Estes admitted to the troopers that she knew Deremer was going to murder McKinney when she drove him to McKinney's house. She told the troopers that she viewed the situation as "us die or him die". Moreover, immediately after the killing, Estes entered McKinney's house, retrieved the slip of paper from his wallet that had the combination to his safe, and then led Deremer to the safe so that they could steal McKinney's pain medications. This evidence was sufficient to support the conclusion that Estes acted with the *mens rea* for accomplice liability, and thus to justify a verdict finding Estes guilty of first-degree murder.

Admittedly, the State's case became stronger if the jurors improperly viewed Deremer's purported out-of-court statements as proof of the matters asserted—primarily, the assertions that Estes helped plan the murder and that she discussed various methods of committing the crime with Deremer. But whether or not Estes helped Deremer with this advance planning, the evidence presented at Estes's trial amply supported the jury's decision.

*The remaining issue: Estes's criticism of a comment that the trial judge made to the jury*

Estes's trial judge, Judge Smith, allowed the jurors to suggest additional questions that might be posed to witnesses during the trial. In one of these jury suggestions, a juror asked about the precise content of the conversation that purportedly took place between Jason Chew and Richard Deremer. Judge Smith told the jurors that they would not hear any evidence on this point:

> *The Court*: [To the jury] One of the questions [you have suggested, which] I'm not going to ask, [is] what was revealed

---

3.  *See, e.g., Wyatt v. State*, 981 P.2d 109, 115–16 (Alaska 1999).

4.  *Andrew v. State*, 237 P.3d 1027, 1043 (Alaska App.2010); *Riley v. State*, 60 P.3d 204, 207 (Alaska App.2002).

5.  *See Riley v. State*, 60 P.3d 204, 210 (Alaska App.2002), explaining that, to prove a defendant's liability as an accomplice under AS 11.16.110(2), the government must show that the defendant acted with the intent to promote or facilitate the crime, and not merely with the knowledge that another person intended to commit the crime.

[in] the [surreptitiously monitored] conversation [between Jason Chew and Richard Deremer]. You are not going to hear the conversation between Jason Chew and Richard Deremer. And the reason you're not going to hear [that earlier conversation] is that Mr. Deremer obviously was Ms. Estes's co-defendant—and, under our rules, ... he's not available for cross examination, [so] what he said outside of court can't be introduced to the jury. That's one of our evidentiary rules, [a rule] that actually was the subject of a recent United States Supreme Court case called *United States versus Crawford.* [*sic* ] [The *Crawford* decision] set pretty tight limits on what can be done with unavailable witnesses, especially ... co-defendants.

So that's just to give you a sense [of why I am rejecting your suggestion]. I'm going to ask you not to speculate as to what Mr. Deremer and Mr. Chew talked about. All right? ... As I've told you many times, please only analyze [this] case in terms of the evidence you hear in court. And ... when the tape [of the conversation between] Mr. Chew and Ms. Estes [is played for you], I'll have a further instruction for you about that tape as well. So I'm—I always talk to juries at the end of the case, and I can tell you a whole lot more about this stuff, outside the context of the case, once [you] complete your deliberations. But at this point, I'll ask you not to speculate about anything.

In an argument comprising three sentences at the end of her opening brief, Estes takes issue with the next-to-last sentence of Judge Smith's above-quoted comments to the jurors. Estes contends that when Judge Smith told the jurors, "I can tell you a whole lot more about this stuff ... once [you] complete your deliberations", the judge was essentially telling the jurors that Deremer had said even more things that were incriminating to Estes, and that the judge was willing to apprise the jury of this additional information once the trial was over.

Estes made no objection to Judge Smith's remarks at the time, so she must show that these remarks amounted to plain error.

We find no plain error. Estes's claim of error is based on the worst possible construction of the judge's words. When Judge Smith's comments are read as a whole, those comments appear to be addressed primarily toward explaining the legal reason why the judge was required to reject their suggestion for additional evidence. Judge Smith told the jurors about the *Crawford* decision, and the principle that a witness's statements should not be admitted into evidence if the witness is not available to be cross-examined.

It was in this context that Judge Smith said to the jurors, "I can tell you a whole lot more about this stuff, *outside the context of the case,* once [you] complete your deliberations." As we have explained, Judge Smith's remarks (taken as a whole) were primarily focused on the constitutional and procedural reasons why the suggested evidence was improper. Thus, when Judge Smith said that he could tell the jurors more about "this stuff", but only "outside the context of this case", it seems most probable that Judge Smith was speaking of his willingness to tell the jurors more about the legal principles that prohibit or restrict the admission of out-of-court statements made by witnesses who can not be cross-examined.

This conclusion is bolstered by the fact that Judge Smith explicitly asked the jurors "not to speculate as to what Mr. Deremer and Mr. Chew talked about".

For these reasons, we conclude that Estes has failed to show plain error in Judge Smith's above-quoted comments to the jurors.

*Conclusion*

The judgement of the superior court is AFFIRMED.