723 S.E.2d 402

**STATE of West Virginia, Plaintiff Below, Respondent**

v.

**Timothy Michael WALDRON, Defendant Below, Petitioner.**

No. 11–0399.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 10, 2012.

Decided Jan. 19, 2012.

Courtney L. Ahlborn, Parkersburg, WV, for Petitioner.

Darrell V. McGraw, Jr., Attorney General, Robert D. Goldberg, Assistant Attorney General, Charleston, WV, for Respondent.

DAVIS, Justice:

Timothy Michael Waldron appeals from an order of the Circuit Court of Wood County sentencing him to one to five years imprisonment. He was convicted by a jury of one count of delivery of a controlled substance. Mr. Waldron asserted six issues as error in this appeal. However, this Court limited oral argument to one issue: whether the trial court committed error in admitting audio and video recordings of the drug transaction. After a careful review of the briefs and record submitted on appeal, and listening to the argument of the parties, we affirm.

## I.

## FACTUAL AND PROCEDURAL HISTORY

At some point in early 2009, Michael Forman contacted Detective D.D. Sturm of the Parkersburg City Police Department and informed the officer that Mr. Waldron was selling marijuana.[1] Detective Sturm, who was also a member of the Parkersburg Violent Crime and Narcotic Task Force ("Task Force"), arranged to have Mr. Forman act as a confidential informant for the purpose of purchasing drugs from Mr. Waldron.[2]

On May 4, 2009, at around 10:00 p.m., Mr. Forman met Detective Sturm and other members of the Task Force behind a Kmart store in Parkersburg. The meeting was arranged to prepare Mr. Forman for making a drug transaction with Mr. Waldron. During the meeting, Mr. Forman was searched personally, and his car was searched. The search took place to make sure that Mr. Forman had no personal money, drugs, or other contraband when he made the drug purchase with Mr. Waldron. After the search, Mr. Forman was provided $300.00 to pay for the marijuana. He also was outfitted with recording devices that were attached to his body.

When Mr. Forman left in his car, he was closely followed by Detective Sturm. Mr. Forman drove to a nearby Wendy's parking lot and parked his car. Detective Sturm parked in the area.[3] Mr. Waldron arrived in the parking lot driving a motorcycle. Mr. Waldron walked over to Mr. Forman's car and got inside. While the two men were in the car, Detective Sturm listened to their conversation via a transmitting device that was on Mr. Forman's person. Mr. Waldron was in the car for about four minutes before he got out and left the area on his motorcycle.[4] Mr. Forman drove back to the Kmart. Once he arrived, Mr. Forman turned over to Detective Sturm a ziploc bag containing marijuana that was purchased from Mr. Waldron.

In September 2009, a grand jury indicted Mr. Waldron on one count of delivery of a controlled substance in violation of W. Va. Code § 60A–4–401(a)(ii) (2005) (Repl.Vol. 2010). The case proceeded to trial on May 5, 2010. During the trial, the State called four law enforcement witnesses.[5] Detective

---

1. At the time of Mr. Forman's initial contact with Detective Sturm, Mr. Waldron was known only as "Tim."

2. Detective Sturm previously had used Mr. Forman as a confidential informant in eight or more other drug transactions.

3. Four Task Force officers already were waiting in the area.

4. Detective Sturm testified that, normally, the Task Force did not arrest a drug suspect immediately after a drug transaction so as to protect the confidential informant.

5. The prosecutor did not call Mr. Forman as a witness. The prosecutor was unable to locate Mr. Forman. Mr. Forman had notified Detective Sturm that he had changed his mind and was not going to testify against Mr. Waldron.

Sturm testified that he saw Mr. Waldron enter Mr. Forman's car, and was later able to identify him from a photo. Additionally, Detective Sturm testified that he heard the conversation between Mr. Waldron and Mr. Forman. Detective Sturm testified further that, after Mr. Forman returned to Kmart, he had a ziploc bag containing marijuana, but not the $300.00 he was given to purchase the drug.

Next, Deputy J. DeWeese testified that he operated a hidden video camera that recorded the drug transaction between Mr. Waldron and Mr. Forman. Deputy DeWeese also identified Mr. Waldron as the person on the video with Mr. Forman.

Officer R. Cox further testified that he searched Mr. Forman's car before it was driven to the Wendy's parking lot and that no money, drugs, or other contraband was found in the car. Officer Cox testified that he saw Mr. Waldron get into Mr. Forman's car at the Wendy's parking lot. Additionally, Officer Cox also testified that he followed Mr. Forman back to the Kmart and saw the ziploc bag containing marijuana. Lastly, forensic chemist F.S. Machado testified that she tested the green vegetation contained in the ziploc bag and that it was marijuana. At the close of the State's case-in-chief, counsel for Mr. Waldron informed the court that he was not going to call any witnesses.

The jury returned a verdict finding Mr. Waldron guilty of one count of delivery of a controlled substance. The trial court subsequently sentenced Mr. Waldron to one to five years in prison. This appeal followed.

## II.

## STANDARD OF REVIEW

In this case, we are called upon to address a challenge to the admission of evidence by the trial court. As a general matter, we have held that " '[r]ulings on the admissibility of evidence are largely within a trial court's sound discretion and should not be disturbed unless there has been an abuse of discretion.' *State v. Louk,* 171 W.Va. 639, 643, 301 S.E.2d

596, 599 (1983)." Syl. pt. 2, *State v. Peyatt,* 173 W.Va. 317, 315 S.E.2d 574 (1983). However, the admissibility issue raised in this case is challenged on constitutional grounds. As framed, the issue presents a question of law. This Court has held that "[w]e review questions of law *de novo.*" *May v. May,* 214 W.Va. 394, 398, 589 S.E.2d 536, 540 (2003). *See also State v. Whitt,* 220 W.Va. 685, 690, 649 S.E.2d 258, 263 (2007) ("Our review of the constitutional issue raised in this case is plenary."); *United States v. Powers,* 500 F.3d 500, 505 (6th Cir.2007) ("Generally, we review alleged violations of the Confrontation Clause de novo." (citation omitted)). Mindful of these standards, we address the merits of the constitutional issue presented.

## III.

## DISCUSSION

### Admission of Audio and Video Recordings of Drug Transaction

During the trial of this proceeding, the State admitted into evidence, over the objections of Mr. Waldron, the audio and video recordings of the drug transaction between Mr. Waldron and Mr. Forman.[6] Before this Court, Mr. Waldron argues, as he did below, that the admission of Mr. Forman's statements on the audio and video recordings violated his Sixth Amendment right to confront his accuser. Mr. Waldron relies upon *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), to support this alleged constitutional violation. However, the State contends that *Crawford* is not applicable because the audio and video recordings were not admitted for the truth of the matter asserted therein.

■ To begin, this Court first addressed the *Crawford* decision in *State v. Mechling,* 219 W.Va. 366, 633 S.E.2d 311 (2006). In *Mechling* we held that,

> [p]ursuant to *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the Confrontation Clause contained

---

6. The audio recording was separate from the video recording. The video recording had its own built-in audio recording of the drug transac-

tion. However, the video's audio recording was inaudible. Because of this, when the video was played during the trial, the sound was muted.

within the Sixth Amendment to the United States Constitution and Section 14 of Article III of the West Virginia Constitution bars the admission of a testimonial statement by a witness who does not appear at trial, unless the witness is unavailable to testify and the accused had a prior opportunity to cross-examine the witness.

Syl. pt. 6, *Mechling,* 219 W.Va. 366, 633 S.E.2d 311. "If a statement is deemed testimonial, and is offered for the truth of the matter asserted, its admission is controlled by *Crawford* and *Mechling.*" Louis J. Palmer, Jr., and Robin Jean Davis, Vol. 2, *Handbook on Evidence for West Virginia Lawyers,* § 8–4(A), at p. 40 (Supp.2011). In other words, "statements admitted for purposes other than establishing the truth of the matter asserted, are not barred under *Crawford* and *Mechling.*" Palmer and Davis, *id.* The issue of whether the admission of recorded statements by an informant violates *Crawford* appears to be one of first impression for this Court. However, the issue is not new to the law and has been addressed by several state and federal courts.

The court in *Turner v. Commonwealth,* 248 S.W.3d 543 (Ky.2008), addressed the issue of *Crawford's* application to the admission of recorded statements by a nontestifying confidential informant. In *Turner,* the defendant was convicted of several drug trafficking charges. On appeal, the defendant contended that the introduction of a nontestifying informant's comments on audio recordings violated *Crawford.* The appellate court rejected the argument as follows:

> Two of the federal Circuit .Courts of Appeal have addressed this issue and both have noted that an informant's recorded statements may well be testimonial, as the Supreme Court has described, since the informant is aware that his or her statements are being recorded by government agents for the very purpose of criminal prosecution. *United States v. Nettles,* 476 F.3d 508, 517 (7th Cir.2007); *United States v. Hendricks,* 395 F.3d 173 (3rd Cir.2005). Both Courts have held, however, that the informant's statements are not hearsay and thus that their admission does not violate *Crawford,* when they are offered not for their truth, but "to put [the defendant]'s admissions on the tapes into context, making the admissions intelligible for the jury." *United States v. Nettles,* 476 F.3d at 517 (citation and internal quotation marks omitted). We concur in this analysis, summarized by the Third Circuit as follows:

> > [I]f a Defendant or his or her coconspirator makes statements as part of a reciprocal and integrated conversation with a government informant who later becomes unavailable for trial, the Confrontation Clause does not bar the introduction of the informant's portions of the conversation as are reasonably required to place the defendant or coconspirator's nontestimonial statements into context.

> *United States v. Hendricks,* 395 F.3d at 184.

*Turner,* 248 S.W.3d at 545–46.

Moreover, the issue also was squarely addressed in *State v. Bell,* No. M2008–01187–CCA–R3–CD, 2009 WL 3925370 (Tenn.Crim. App. Nov. 19, 2009). In *Bell,* the defendant was convicted of selling cocaine. During the trial, the State introduced an audio recording of the drug transaction between the defendant and an informant. The informant did not testify at the trial. On appeal, the defendant contended that introduction of the audio recording, without the informant testifying, violated *Crawford.* The criminal appeal court disagreed as follows:

> [C]ourts have generally held that informant statements made during a recorded conversation between the informant and a non-law enforcement party do not violate the Confrontation Clause. In this situation, the informant generally does not divulge information but rather converses with a third party in order to expose a target's criminal acts to police. As a consequence, the fact of the informant's interaction with a third party rather than the substance of his statements during that interaction is the chief focus of law enforcement and, later, of a criminal trial. . . . In summary, statements made during recorded conversations between an informant and a non-law enforcement party

generally are admissible because they are not offered for the truth of the matter they assert.

*Bell*, 2009 WL 3925370, at *6.

Additionally, in *United States v. Tolliver*, 454 F.3d 660 (7th Cir.2006), *cert. denied*, 549 U.S. 1149, 127 S.Ct. 1019, 166 L.Ed.2d 768 (2007), two defendants were convicted of cocaine-related drug charges. At the joint trial of the defendants, the government presented audiotapes of conversations between one of the defendants and a confidential informant, who made controlled purchases of cocaine from the defendants. On appeal, one of the defendants argued that admission of the tape-recorded conversations he had with the confidential informant violated *Crawford* and the Confrontation Clause. The appellate court disagreed:

> There are two declarants at issue here. The first is [defendant] himself. His statements on the tapes constitute admissions by a party-opponent, and, as such, those statements are, by definition, not hearsay under Federal Rule of Evidence 801(d)(2)(A). Consequently, since the prohibition annunciated in *Crawford* only applies to hearsay, that prohibition does not cover [defendant's] statements on the tapes. Furthermore, [defendant]—the target of this sting operation who engaged in informal conversations with a customer, not known to him to be an informant—did not make his statements here with any expectation that they would be used against him in a criminal trial. If anything, as a purveyor of an illegal substance, [defendant] made these statements believing the exact opposite. Moreover, unlike a witness giving testimony, [defendant] was not recounting past events on these tapes but was rather making candid, real-time comments about drug transactions in progress. Therefore, besides not being hearsay, [defendant's] statements on the tapes are also not testimonial and thus fall outside of the *Crawford* rule against testimonial hearsay.

The other declarant in question is [the informant]. It is important to emphasize again that, aside from the testimonial versus nontestimonial issue, a crucial aspect of *Crawford* is that it only covers hearsay, *i.e.*, out-of-court statements "offered in evidence to prove the truth of the matter asserted." Thus, to restate, *Crawford* only covers testimonial statements proffered to establish the truth of the matter asserted. In this case, as pointed out by the government, [the informant's] statements were admissible to put [defendant's] admissions on the tapes into context, making the admissions intelligible for the jury. Statements providing context for other admissible statements are not hearsay because they are not offered for their truth. As a result, the admission of such context evidence does not offend the Confrontation Clause because the declarant is not a witness against the accused. Therefore, as [the informant's] statements were readily admissible as this form of non-hearsay, [they are] not subject to the strictures of *Crawford* and the Confrontation Clause[.]

*Tolliver*, 454 F.3d at 665–66 (internal citations omitted) (footnote omitted). *See also United States v. Smalls*, 605 F.3d 765 (10th Cir.2010) (accomplice's recorded statement to confidential informant was nontestimonial, and thus not barred by Confrontation Clause); *United States v. Toepfer*, 317 Fed. Appx. 857 (11th Cir.2008) (tape-recorded conversations between defendant and confidential informant did not violate right of confrontation); *United States v. Jones*, 205 Fed. Appx. 327 (6th Cir.2006) (portions of recordings capturing confidential informant's statements were not offered for truth of the matters); *Wilson v. United States*, 995 A.2d 174 (D.C.2010) (recorded statements made by informant were not admitted to prove truth of the matter asserted, for purposes of Confrontation Clause); *State v. Hernandez*, No. A–5981–07T4, 2010 WL 816828 (N.J.Super.Ct.App.Div., Mar. 9, 2010) (same); *State v. Johnson*, 771 N.W.2d 360 (S.D.2009) (same).[7]

---

7. During oral argument, counsel for Mr. Waldron contended for the first time that under *Bullcoming v. New Mexico*, —— U.S. ——, 131 S.Ct. 2705, 180 L.Ed.2d 610 (2011), the recordings should have been excluded. We disagree. The decision in *Bullcoming* is factually distinguishable. *Bullcoming* addressed the narrow issue of "whether the Confrontation Clause per-

■ The above cases illustrate that "the consensus among the federal and state courts that have considered this question is that an informant's portion of a recorded conversation with a defendant made in the course of an investigation is not testimonial in nature[.]" *State v. Smith*, 289 Conn. 598, 960 A.2d 993, 1011 (2008). In view of the consensus on this issue, we now hold that Recorded statements made between a confidential informant and a defendant generally are admissible against the defendant even when the informant does not testify as long as they are not offered for the truth of the matter they assert.

In the instant case, Mr. Waldron's argument that *Crawford* prohibited the introduction of Mr. Forman's recorded statements is foreclosed by our holding that recorded statements made between a confidential informant and a defendant generally are admissible against the defendant. However, Mr. Waldron argues that the statements of Mr. Forman were admitted for the truth of the matter asserted and, therefore, constituted prohibited testimonial statements. In other words, Mr. Waldron asks this Court to determine whether the statements in this case are an exception to the general rule that we have applied.

As a general matter, most courts that have addressed the issue have not performed an independent analysis of statements by a confidential informant. The courts merely apply the general rule. However, the court in *Bell*, *supra*, performed an independent analysis. As previously mentioned, the defendant in *Bell* was convicted of selling cocaine. On appeal, the defendant argued that the State introduced the audio recording of the informant's statements for the truth of the matter asserted. After setting out the general rule

allowing the introduction of such statements, the court in *Bell* indicated that its "analysis of whether the Confrontation Clause bars the statements at issue ..., involves several inquiries: (a) whether the statements contain assertions; (b) whether the statements are testimonial; and (c) whether the statements are offered for the truth of the matter they assert." *Bell*, 2009 WL 3925370, at *6. Prior to applying this test to the facts of the case, *Bell* noted:

Although the record does not contain a transcript of the audio recording, which defense counsel asserted at trial to be "inaudible," it contains the audio recording itself. On the recording, the informant and the Defendant can be heard engaging in casual conversation, with references to the informant's mother's health and his upcoming paycheck, but little else is decipherable. Investigator Hardin's testimony, therefore, contained the bulk of the statements at issue in this appeal.

*Bell*, 2009 WL 3925370, at *6. After reviewing the relevant statements through the trial testimony of the investigating officer, the court in *Bell* held the following:

In summary, the trial court admitted three statements by the informant: (1) a "discussion" of cocaine; (2) a declaration that the price of the cocaine he was purchasing was $250; (3) a response to the Defendant that he did not have a "stem" with which to smoke the crack-cocaine.

As discussed above, the statements' admissibility depends on whether they contained assertions, whether they were introduced to prove the truth of those assertions, and whether they were testimonial. First, we conclude that each statement contained an assertion. The first made general assertions about co-

mits the prosecution to introduce a forensic laboratory report containing a testimonial certification—made for the purpose of proving a particular fact—through the in-court testimony of a scientist who did not sign the certification or perform or observe the test reported in the certification." *Bullcoming*, ― U.S. ―, 131 S.Ct. at 2710, 180 L.Ed.2d 610. The Supreme Court held that insofar as the report was admitted for the truth of the matter asserted, the "accused[] [had a] right ... to be confronted with the analyst who made the certification, un-

less that analyst [was] unavailable at trial, and the accused had an opportunity, pretrial, to cross-examine that particular scientist." *Id.* In the instant proceeding, the forensic analyst who tested the green vegetation given to Mr. Forman by Mr. Waldron, and issued a report that it was marijuana, testified at the trial and was cross-examined by Mr. Waldron. Thus, *Bullcoming* has no relevancy to this case. *See United States v. Summers*, No. 06–5009, 2011 WL 6276085 (4th Cir. Dec. 16, 2011) (distinguishing *Bullcoming*).

caine, the second asserted the price of the crack cocaine the informant purchased, and the third asserted that the informant did not possess a stem with which the Defendant could smoke the crack cocaine.

Second, we conclude that the statements were not introduced to prove the truth of these assertions. The general characteristics of cocaine, the price of the crack-cocaine the informant purchased, and the informant's possession of a "stem" are not relevant to whether the Defendant sold drugs. The informant's statements, therefore, were not introduced to prove these assertions. Instead, the State introduced the statements to prove that the informant and the Defendant had a conversation that concerned cocaine and its price. From this fact, in conjunction with other facts demonstrated by the proof, such as the fact that the informant left the conversation with a bag of cocaine, the trier of fact deduced that the Defendant sold the informant crack-cocaine. The trier of fact would have deduced this regardless of the price of the crack-cocaine and whether the informant possessed a "stem." Because the truth of the informant's statements were never in issue, the informant's statements were not introduced to prove the truth of the matter asserted.

Furthermore, the informant's statements gave context to the Defendant's admissible statements. Investigator Hardin's testimony and the audio recording contained several statements by the Defendant. For example, Investigator Hardin testified that the Defendant told the informant he was afraid Officer Carpenter was an undercover officer. The Defendant's statements constitute admissions by a party-opponent and, as such, are by definition not hearsay under Rule 801(c) and, thus, do not offend *Crawford.* Admission of the informant's statements provided context for the Defendant's admissible statements, illuminating their meaning to the jury. As such, because they were not offered for their truth, they were not hearsay, and their admission did not offend *Crawford.*

*Bell,* 2009 WL 3925370, at *7–8.

■ As previously stated, Mr. Waldron essentially is asking this Court to perform a *Bell*-type analysis of Mr. Forman's statements. The problem with such a request is that the record submitted on appeal does not contain the video and audio recordings of the drug transaction. Further, Mr. Waldron has failed to set out in his brief any statement made by Mr. Forman during the drug transaction that was admitted at trial.[8] In our review of the trial transcript, we have located only the points in the trial when the video and audio recordings were introduced. The trial transcript does not contain any testimony from those recordings or testimony by any witness as to actual statements made by Mr. Forman on the recordings. Insofar as Mr. Waldron has failed to provide this Court with the text of the statements he alleges violated *Crawford,* we are unable to determine whether those statements fall outside the application of the general rule that such statements are admissible against the defendant, when they are not offered for the truth of the matter they assert. Consequently, based upon the record provided on this issue, we find no error in admitting the video and audio recordings of the drug transaction. *See* Syl. pt. 6, *In re Michael Ray T.,* 206 W.Va. 434, 525 S.E.2d 315 (1999) ("The responsibility and burden of designating the record is on the parties, and appellate review must be limited to those issues which appear in the record presented to this Court."); *State v. Miller,* 194 W.Va. 3, 14, 459 S.E.2d 114, 125 (1995) ("[S]hould an appellant spurn his or her duty and drape an inadequate or incomplete record around this Court's neck, this Court, in its discretion, either has scrutinized the merits of the case insofar as the record permits or has dismissed the appeal if the absence of a complete record thwarts intelligent review.").[9]

---

8. During oral arguments, counsel for Mr. Waldron made a vague reference to some non-incriminating statements made on the tapes.

9. We have carefully considered the remaining issues raised by Mr. Waldron in this appeal and find that they have no merit.

## IV.

### CONCLUSION

In view of the foregoing, we affirm the trial court's order of August 17, 2010, sentencing Mr. Waldron to imprisonment for one to five years.

Affirmed.