# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs)  No. 13-0112** (Mason County 11-F-79)

**Robert Dewayne Martin,**
**Defendant Below, Petitioner**

**FILED**

October 18, 2013
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Robert Dewayne Martin, by counsel Rebecca Stoller Johnson, appeals the sentencing order of the Circuit Court of Mason County following his convictions of the felony offenses of delivery of a controlled substance and conspiracy. Respondent State of West Virginia, by counsel Christopher S. Doddrill, filed a response.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner, along with co-defendant Joshua McCormick ("McCormick"), was indicted by the Mason County Grand Jury for one count of delivery of a controlled substance (marijuana) and one count of conspiracy. After a one-day trial, the jury convicted petitioner of the indicted offenses. The court initially sentenced petitioner to concurrent terms of one to five years in the penitentiary. However, after reconsideration, the circuit court placed petitioner on home confinement.

The evidence at trial is summarized as follows: Corporal B.L. Keefer of the West Virginia State Police testified that on February 24, 2011, he witnessed petitioner sell marijuana to McCormick while he and a confidential informant were conducting an undercover investigation. As part of the investigation, Trooper Keefer and the informant, who was carrying a hidden video recording device, drove to a house on Lincoln Avenue in Point Pleasant. While at the residence, they interacted with McCormick and gave McCormick a cell phone to make calls to obtain drugs on their behalf. McCormick arranged the drug buy over the phone, telling Trooper Keefer that he had spoken with petitioner. McCormick then told Trooper Keefer that they were going to drive to "North Main" to petitioner's residence. Trooper Keefer testified that he was familiar with the residence and had previously seen petitioner there.

1

Trooper Keefer, the informant, McCormick, and a juvenile male rode to petitioner's residence in the informant's vehicle. They parked approximately thirty to fifty feet from the entrance to the house. The informant gave McCormick $20 to buy marijuana, and McCormick walked to the front door of the house in clear view of Trooper Keefer, who was in the car. Trooper Keefer testified that he saw McCormick interact with someone, and then saw petitioner stick his head out and look in their direction.

Trooper Keefer testified that he knew that the informant's video recorder in the vehicle was not in a position to witness the transaction, so Trooper Keefer used his cell phone to capture a picture of McCormick interacting with petitioner at the front door. Trooper Keefer testified that he observed McCormick hand something to petitioner and that petitioner handed McCormick what appeared to be a plastic cellophane wrapper in return.

After McCormick returned to the vehicle, he handed the informant the plastic cellophane wrapper, in which Trooper Keefer testified he could identify marijuana by the look and smell. Trooper Keefer and the informant then dropped off McCormick and the juvenile male at the Lincoln Avenue residence, and Trooper Keefer moved to another location to process the evidence from the informant. The substance was confirmed by laboratory testing to be 0.61 grams of marijuana.

Over the objections of petitioner both pre-trial and during trial, the State played for the jury the video recording taken by the informant, in which McCormick tells Trooper Keefer and the informant that it was petitioner with whom he arranged the drug buy and that petitioner had marijuana to sell. Because McCormick did not testify at trial,[1] petitioner objected at trial and claimed the introduction of McCormick's recorded statements violated his right to confront the witnesses against him. The circuit court rejected petitioner's arguments. Petitioner also made pre and post-verdict arguments that there was insufficient evidence to sustain the verdict. The circuit court denied those arguments as well. This appeal followed.

Petitioner raises two assignments of error on appeal. First, he argues that the admission of McCormick's recorded statements violated his rights under the Confrontation Clause. Three separate levels of scrutiny apply to Confrontation Clause claims: The circuit court's order is reviewed for abuse of discretion; its factual findings are reviewed for clear error; and its legal rulings are reviewed de novo. *State v. Mechling,* 219 W.Va. 366, 633 S.E.2d 311 (2006). As the Confrontation Clause implicates petitioner's constitutional rights, an erroneous ruling must be reversed unless the State proves the error to be harmless. *Id.*

Petitioner bases his argument on the holding of the United States Supreme Court in *Crawford v. Washington,* 541 U.S. 36 (2004), that out of court statements that are testimonial in nature are barred, unless the witness is unavailable and the defendant has had a prior opportunity to cross-examine, regardless of whether such statements are deemed reliable by the court. We have held that a testimonial statement is one made under circumstances that would lead an

---

[1]McCormick pled guilty, and was incarcerated at the Anthony Correctional Center at the time of petitioner's trial.

objective witness reasonably to believe that the statement would be available for use at a later trial. Syl. Pt. 8, *State v. Mechling,* 219 W.Va. 366, 633 S.E.2d 311 (2006). The Court looks at whether the statements contained assertions, whether they are testimonial in nature, and whether they are being offered for the truth of the matter asserted. *State v. Waldron,* 228 W.Va. 577, 723 S.E.2d 402 (2012).

We disagree with petitioner that the admission of McCormick's statements violates his rights under the Confrontation Clause. In *Waldron,* this Court permitted the use of a confidential informant's recorded conversation with a defendant, ruling that "[r]ecorded statements made between a confidential informant and a defendant generally are admissible against the defendant even when the informant does not testify as long as they are not offered for the truth of the matter they assert." *Id.* at 582, 407. The same principle applies to statements by a co-conspirator. *See United States v. Watson,* 525 F.3d 583 (7th Cir. 2008); *United States v. Hendricks,* 395 F.3d 173 (3rd Cir. 2005); *United States v. Saget,* 377 F.3d 223 (2nd Cir. 2004).

We cannot conclude from the record that McCormick's statements were made under the circumstances that would lead McCormick[2] to reasonably believe that the statement would be available for use at a later trial. There is no evidence that McCormick knew he was speaking with a government informant. Rather, the evidence supports that he believed he was speaking with a drug customer. Therefore, his statements are not testimonial.

Moreover, McCormick's statements are not hearsay as they were not offered for the truth of the matter asserted. Whether McCormick's statements were true, i.e., that he was speaking with petitioner on the phone, and that the petitioner had marijuana, is irrelevant. We agree with the State that the statements merely reveal McCormick's motivation for driving to petitioner's house, where Trooper Keefer watched McCormick buy drugs from petitioner.

In his second assignment of error, petitioner argues that there was insufficient evidence to sustain a guilty verdict. Petitioner argues that his voice is not on the recording, only McCormick's. Petitioner contends next that while Trooper Keefer testified that he saw petitioner stick his head out of the door, he testified that he only saw a hand when asked about the exchange of money and drugs with McCormick.

In Syllabus Point 3 of *State v. Guthrie,* 194 W.Va. 657, 461 S.E.2d 163 (1995), this Court held:

> A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the

---

[2]Petitioner argues that McCormick's statements are viewed from petitioner's perspective, not McCormick's. This argument misconstrues the well-settled law on the Confrontation Clause. *See United States v. Udeozor,* 515 F.3d 260, 268 (4th. Cir. 2008) (holding that the "'common nucleus' of the 'core class' of testimonial statements is whether a reasonable person in the *declarant's position* would have expected his statements to be used at trial – that is, whether a *declarant* would have expected or intended to 'bear witness' against another in a later proceeding.") (Emphasis added).

3

evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled.

To convict petitioner of delivery of a controlled substance, the State had to prove that petitioner intentionally delivered a Schedule I or II controlled substance[3] to another. W.Va. Code § 60A-4-401(a)(1). To convict petitioner of conspiracy under West Virginia Code § 61-10-31, the State had to prove that petitioner "agreed with others to commit an offense against the State and that some overt act was taken by a member of the conspiracy to effect the object of that conspiracy." *State v. Less,* 170 W.Va. 259, 264-65, 294 S.E.2d 62, 67 (1981). The agreement to commit the crime "may be inferred from the words and actions of the conspirators, or other circumstantial evidence, and the State is not required to show the formalities of an agreement." *Id.* At 265, 67.

Contrary to petitioner's argument, we find sufficient evidence to sustain petitioner's convictions. Trooper Keefer testified as to how he witnessed McCormick buy marijuana from petitioner. He described driving with McCormick to petitioner's house, watching the informant give McCormick money, watching McCormick approach petitioner's front door, seeing petitioner stick his head out from the door while talking with McCormick, and witnessing McCormick return with marijuana. This evidence is sufficient to sustain petitioner's conviction for delivery of a controlled substance. As to the conspiracy, the jury heard evidence that McCormick took Trooper Keefer and the confidential informant to petitioner's residence to obtain marijuana. We believe that the jury could have reasonably and appropriately inferred from this evidence that petitioner and McCormick had an agreement to sell marijuana.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** October 18, 2013

**CONCURRED IN BY:**

Chief Justice Brent D. Benjamin
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

---

[3] Marijuana is a Schedule I controlled substance. 21 U.S.C. § 812(c).

4