# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.)  No. 18-1041** (Cabell County 17-F-326, 18-F-186)

**Donald Terrell Smith,**
**Defendant Below, Petitioner**

**FILED**
**May 26, 2020**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Donald Terrell Smith, by counsel Todd Meadows, appeals the Circuit Court of Cabell County's October 22, 2018, order sentencing him as a recidivist to life imprisonment with mercy following his conviction for delivery of a controlled substance. Respondent State of West Virginia, by counsel Benjamin F. Yancey III, filed a response. Petitioner filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In 2016, a confidential informant ("CI") began working with the South Point Police Department ("SPPD") in Ohio. The CI indicated that she could make a controlled drug buy from petitioner, who lived in Huntington, West Virginia. The SPPD, having no jurisdiction in West Virginia, coordinated with the Drug Enforcement Agency ("DEA") to involve the Huntington Police Department ("HPD") with its drug investigation.

The CI made her first controlled drug buy from petitioner on July 20, 2016, while wearing a recording device. Officer Craig Preece, working undercover with the HPD, accompanied the CI, but he waited in the car while the CI entered petitioner's home to purchase $200 worth of heroin. On August 11, 2016, the CI made a second purchase from petitioner. Officer Preece accompanied the CI, but he waited in the car while the CI joined petitioner in petitioner's car to complete the buy. The CI, who was again wearing a recording device, purchased crack cocaine and oxymorphone for $1,500.

On August 30, 2017, petitioner was indicted on three counts of delivery of a controlled substance, one count for each of the three controlled substances. Petitioner's trial on these charges began on April 24, 2018. The CI did not testify at trial; rather, officers from the DEA,

1

HPD, and SPPD testified to the controlled drug buys, and the State played the recordings of those buys captured by the device worn by the CI.

The jury convicted petitioner of each count charged in the indictment. On April 30, 2018, the State filed a recidivist information alleging that petitioner was convicted in 2012 of the felony offense of trafficking of a controlled substance in Kentucky and, in 2007, of the felony offense of distribution of cocaine base in West Virginia. After a jury found petitioner to be the same person convicted of the crimes set forth in the recidivist information, the court sentenced him to life imprisonment, with mercy, on October 22, 2018.[1] Petitioner now appeals from that order.

In his first assignment of error, petitioner claims that the circuit court erred in permitting the State to "enter[] the testimonial statements of the [CI through the recordings] to prove that [p]etitioner had dealt drugs." Instead of the CI testifying in person, the officers "narrat[ed]" the CI's recorded transactions of the controlled buys. Petitioner argues that the admission of these recordings violated his Sixth Amendment right to confront his accuser.

Following the United States Supreme Court's decision in *Crawford v. Washington*, 541 U.S. 36 (2004), this Court held in syllabus point 6 of *State v. Mechling*, 219 W. Va. 366, 633 S.E.2d 311 (2006), that

> the Confrontation Clause contained within the Sixth Amendment to the *United States Constitution* and Section 14 of Article III of the *West Virginia Constitution* bars the admission of a testimonial statement by a witness who does not appear at trial, unless the witness is unavailable to testify and the accused had a prior opportunity to cross-examine the witness.

This bar, however, applies only to hearsay statements:

> "If a statement is deemed testimonial, and is offered for the truth of the matter asserted, its admission is controlled by *Crawford* and *Mechling*." Louis J. Palmer, Jr., and Robin Jean Davis, Vol. 2, *Handbook on Evidence for West Virginia Lawyers*, § 8-4(A), at p. 40 (Supp. 2011). In other words, "statements admitted for purposes other than establishing the truth of the matter asserted, are not barred under *Crawford* and *Mechling*." Palmer and Davis, *id.*

*State v. Waldron*, 228 W. Va. 577, 580, 723 S.E.2d 402, 405 (2012). Thus, this Court held in *Waldron* that "[r]ecorded statements made between a confidential informant and a defendant generally are admissible against the defendant even when the informant does not testify as long

---

[1] Under West Virginia Code § 61-11-18(c), "[w]hen it is determined, as provided in section nineteen of this article, that such person shall have been twice before convicted in the United States of a crime punishable by confinement in a penitentiary, the person shall be sentenced to be confined in the state correctional facility for life."

as they are not offered for the truth of the matter they assert." *Id.* at 578, 723 S.E.2d at 403, syl. pt. 2. This is so because the informant's recorded statements typically "are offered not for their truth, but 'to put [the defendant]'s admissions on the tapes into context, making the admissions intelligible for the jury.'" *Id.* at 580, 723 S.E.2d at 405 (quoting *Turner v. Commonwealth*, 248 S.W.3d 543, 545 (Ky. 2008)).

We find no error in the admission of the recorded transactions between the CI and petitioner, even though the CI did not testify at trial.[2] As explained under *Waldron*, the CI's

---

[2] One example of a conversation petitioner claims was violative of the Confrontation Clause involved him, the CI, and an unidentified individual (designated "UNK" in the following transcript) present in petitioner's home during the first controlled drug buy:

| | |
|---|---|
| CI: | $200 |

. . . .

| | |
|---|---|
| SUSPECT: | YOU SAY YOU GOT 2, RIGHT? |
| CI: | UM HMM. |
| SUSPECT: | THAT'S PERFECT, 'CAUSE I GOT 2 (unintelligible) AND ONE 20. |
| CI: | OK. |
| SUSPECT: | ONE FULL GRAM A PIECE. 175 A PIECE . . . YOU DON'T HAVE TO GIVE ME $200 WHEN THEY ARE 175 A PIECE. SO . . . (unintelligible). TAKE 20 AND I'LL GIVE YOU 5 DOLLARS BACK. |
| CI: | OK. |
| SUSPECT: | THAT'S TWO GRAMS, ONE A PIECE. |
| CI: | OK, ONE A PIECE. |
| SUSPECT: | THAT'S A LITTLE MORE CHUNKIER THAN THAT ONE, BUT, HOWEVER YOU FEEL. |
| CI: | THAT RIGHT HERE. |
| SUSPECT: | $175 ONE. |
| UNK: | BREAK THE OTHER ONE UP. |
| CI: | YEAH. |
| CI: | THAT'S 200 EVEN. |
| SUSPECT: | . . . I'M ABOUT TO GIVE YOU . . . GIVE IT A TRY, JUST GIVE IT A TRY. |

. . . .

| | |
|---|---|
| SUSPECT: | THAT [expletive] IS, I SWEAR, DON'T DO NO LIKE IT'S JUNK. TRY IT FIRST. I'M TELLING YOU I DO A HALF A TENTH OF THIS [expletive]. THEY TOLD ME TO CUT IT BUT |

(continued . . .)

statements were provided not for the truth of the matter asserted, but to place petitioner's admissions into context.

In petitioner's second assignment of error, he claims that the State committed prosecutorial misconduct by commenting that Huntington was overrun by narcotics dealers from Detroit, such as petitioner; entering into evidence pictures of petitioner holding a stack of cash; and eliciting testimony from the officers tying petitioner to upper-level Detroit drug dealers.

In determining whether an improper prosecutorial comment is so damaging as to require reversal, four factors are considered:

(1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; and (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters.

Syl. Pt. 6, in part, *State v. Sugg*, 193 W. Va. 388, 456 S.E.2d 469 (1995).

Petitioner acknowledges, however, that he did not object to any of the testimony or comments about which he now complains, and he urges application of the plain error doctrine. "Failure to make timely and proper objection to remarks of counsel made in the presence of the jury, during the trial of a case, constitutes a waiver of the right to raise the question thereafter either in the trial court or in the appellate court." Syl. Pt. 2, *State v. Adkins*, 209 W. Va. 212, 544 S.E.2d 914 (2001). Although we have applied the plain error doctrine to improper remarks from a prosecutor to which there was no objection, *see State v. Moss*, 180 W. Va. 363, 368, 376 S.E.2d 569, 574 (1988), we have also recognized that "[b]y its very nature, the plain error doctrine is reserved for only the most egregious errors." *Adkins*, 209 W. Va. at 215 n.3, 544 S.E.2d at 917 n.3.

Petitioner has failed to demonstrate error in the comments made or solicited by the prosecutor, let alone an error that affected petitioner's "substantial rights" or affected "the fairness, integrity, or public reputation of the judicial proceedings." Syl. Pt. 7, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995) ("To trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings."). Although petitioner

---

> I DIDN'T. SO, I'M WARNING YOU. NO, I SWEAR TO GOD
> ON MY DEAD MOMMA, I DON'T DO THAT. STRAIGHT UP.

Agent Nathan Deshaies, of the DEA, testified from "his experience" as to what petitioner meant during this recorded conversation, including that the CI should not "do as much as you normally would, indicating that the heroin could be stronger than it typically is and there's more threat of an overdose."

highlights purportedly "irrelevant and prejudicial testimony" and claims that there was "no question that the State elicited extensive testimony about extraneous, irrelevant but extremely prejudicial matters that violated due process," he offers no explanation as to how the highlighted testimony was, in fact, irrelevant or extremely prejudicial. Without such explanation and analysis, petitioner has not shown that there was any error, particularly not error of the "most egregious" sort to which we apply the plain error doctrine. Accordingly, he is entitled to no relief.

Next, petitioner asserts that he is entitled to a new trial under the cumulative error doctrine, and he predicates this claim on the errors alleged in his first two assignments of error. Petitioner adds that the circuit court bolstered Agent Deshaies's identification testimony by repeating that testimony. Specifically, following an objection from the State, the court instructed petitioner's counsel to clarify whether counsel meant visually or audibly when counsel attempted to make the point that Agent Deshaies could not identify petitioner on the recordings of the drug sales because the agent was not there. The court said, "[Agent Deshaies] testified on direct examination that he recognized the voice, had heard [petitioner's] voice before, and from the voice he recognized him to be the one participating in the drugs. . . . That's why you need to qualify whether you are talking about visually or what?"

The circuit court did not bolster Agent Deshaies's testimony. "Bolstering occurs when a party seeks to enhance a witness's credibility before it has been attacked." *State v. Wood*, 194 W. Va. 525, 531, 460 S.E.2d 771, 777 (1995) (citation omitted). Following the State's objection that counsel had overstated the agent's response, the court merely explained the reason for sustaining the objection. Petitioner has failed to demonstrate error; and because he failed to demonstrate error in his first two assignments of error, he has also failed to demonstrate cumulative error. *See State v. Knuckles*, 196 W. Va. 416, 426, 473 S.E.2d 131, 141 (1996) ("Cumulative error analysis should evaluate only the effect of matters determined to be error, not the cumulative effect of non-errors.").

In petitioner's final assignment of error, he argues that because the two underlying felonies that served as predicates for the imposition of his life recidivist sentence were narcotics offenses, the court should have applied the recidivist enhancement in the Uniform Controlled Substances Act, *see* W. Va. Code § 60A-4-408(a) ("Any person convicted of a second or subsequent offense under [the Uniform Controlled Substances Act] may be imprisoned for a term up to twice the term otherwise authorized, fined an amount up to twice that otherwise authorized, or both. . . . "), rather than the life sentence authorized under West Virginia Code § 61-11-18.

We held in Syllabus Point 5 of *State ex rel. Daye v. McBride*, 222 W. Va. 17, 658 S.E.2d 547 (2007), that

> [w]hen any person is convicted of an offense under the Uniform Controlled Substances Act (*W.Va. Code*, Chapter 60A) and is subject to confinement in the state correctional facility therefor and it is further determined, as provided in *W.Va.Code*, 61-11-19 (1943), that such person has been before convicted in the United States of a crime or crimes, including crimes under the Uniform

5

Controlled Substances Act (*W.Va.Code*, Chapter 60A), punishable by confinement in a penitentiary, the court shall sentence the person to confinement in the state correctional facility pursuant to the provisions of *W.Va.Code*, 61-11-18 (2000), notwithstanding the second or subsequent offense provisions of *W.Va.Code*, 60A-4-408 (1971).

Accordingly, the court did not err in sentencing petitioner under West Virginia Code § 61-11-18.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** May 26, 2020

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

**NOT PARTICIPATING:**

Justice Margaret L. Workman