IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2013 Term

_____

No. 12-1066

_____

FILED

October 25, 2013

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA,
Plaintiff Below, Respondent

v.

JASON PAUL LAMBERT,
Defendant Below, Petitioner

Appeal from the Circuit Court of Marion County
The Honorable David R. Janes, Judge
Felony Action No. 11-F-36

AFFIRMED

Submitted: October 16, 2013
Filed: October 25, 2013

Neal Jay Hamilton
Fairmont, WV
Counsel for Petitioner

Patrick Morrisey,
Attorney General
Elbert Lin,
Solicitor General
Laura Young,
Assistant Attorney General
Counsel for Respondent

JUSTICE WORKMAN delivered the Opinion of the Court.

1. "'Rulings on the admissibility of evidence are largely within a trial court's sound discretion and should not be disturbed unless there has been an abuse of discretion.' *State v. Louk*, 171 W. Va. 639, 301 S.E.2d 596, 599 (1983)." Syl. Pt. 2, *State v. Peyatt*, 173 W. Va. 317, 315 S.E.2d 574 (1983).

2. "The discretion of the trial court in ruling on the propriety of argument by counsel before the jury will not be interfered with by the appellate court, unless it appears that the rights of the complaining party have been prejudiced, or that manifest injustice resulted therefrom." Syl. Pt. 3, *State v. Boggs*, 103 W. Va. 641, 138 S.E.321 (1927).

3. "'Pursuant to *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the Confrontation Clause contained within the Sixth Amendment to the *United States Constitution* and Section 14 of Article III of the *West Virginia Constitution* bars the admission of a testimonial statement by a witness who does not appear at trial, unless the witness is unavailable to testify and the accused had a prior opportunity to cross-examine the witness.' Syllabus Point 6, *State v. Mechling*, 219 W. Va. 366, 633 S.E.2d 311 (2006)." Syl. Pt. 1, *State v. Jessica Jane M.*, 226 W. Va. 242, 700 S.E.2d 302 (2010).

4. Where the out-of-court statements of a non-testifying individual are introduced into evidence solely to provide foundation or context for understanding a defendant's

responses to those statements, the statements are offered for a non-hearsay purpose and the introduction of the evidence does not violate the defendant's rights under *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) and *State v. Mechling*, 219 W. Va. 366, 633 S.E.2d 311 (2006).

5.    "Errors involving deprivation of constitutional rights will be regarded as harmless only if there is no reasonable possibility that the violation contributed to the conviction." Syl. Pt. 20, *State v. Thomas*, 157 W. Va. 640, 203 S.E.2d 445 (1974)

6.    """A judgment will not be reversed for any error in the record introduced by or invited by the party seeking reversal." Syl. Pt. 21, *State v. Riley*, 151 W. Va. 364, 151 S.E.2d 308 (1966).' Syllabus point 4, *State v. Johnson*, 197 W. Va. 575, 476 S.E.2d 522 (1996)." Syl. Pt. 4, *State v. Mann*, 205 W. Va. 303, 518 S.E.2d 60 (1999).

7.    "'An appellant or plaintiff in error will not be permitted to complain of error in the admission of evidence which he offered or elicited, and this is true even of a defendant in a criminal case.' Syl. Pt. 2, *State v. Bowman*, 155 W. Va. 562, 184 S.E.2d 314 (1971)." Syl. Pt. 3, *State v. Crabtree*, 198 W. Va. 620, 482 S.E.2d 605 (1996).

8.    "A judgment of conviction will not be set aside because of improper remarks made by a prosecuting attorney to a jury which do not clearly prejudice the accused or result

in manifest injustice." Syl. Pt. 5, *State v. Sugg*, 193 W. Va. 388, 456 S.E.2d 469 (1995).


9.      "Four factors are taken into account in determining whether improper prosecutorial comment is so damaging as to require reversal: (1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; and (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters." Syl. Pt. 6, *State v. Sugg*, 193 W. Va. 388, 456 S.E.2d 469 (1995).

Workman, Justice:

The petitioner, Jason Paul Lambert, was convicted in the Circuit Court of Marion County, West Virginia, of one count of sexual abuse by a parent, guardian or custodian, and one count of distribution and display of obscene matter to a minor. The victim, S.W.,[1] who was four years old at the time of the offenses, was deemed incompetent to testify. On appeal, the petitioner claims that admission at trial of certain of S.W.'s out-of-court statements violated his rights under the United States Constitution, Amendment VI, and the West Virginia Constitution, article III, section 14; and that the prosecuting attorney's closing argument contained statements so egregious as to constitute plain error.[2]

After careful consideration of the parties' briefs, the oral argument, the appendix record, and the applicable law, we affirm the judgment of the circuit court.

## I.  PROCEDURAL AND FACTUAL HISTORY

The petitioner was indicted in the February, 2011, term of court for the felony offenses of sexual abuse by a parent, guardian or custodian, West Virginia Code § 61-8D-5

---

[1]Because of the sensitive nature of the facts alleged in this case, we follow our normal practice and refer to the child by her initials rather than by her full name. *See In re Cesar L.*, 221 W. Va. 249, 252 n.1, 654 S.E.2d 373, 376 n.1 (2007); *In re Randy H.*, 220 W. Va. 122, 125 n.1, 640 S.E.2d 185, 188 n.1 (2006); *In re Clifford K.*, 217 W. Va. 625, 630 n.1, 619 S.E.2d 138, 143 n.1 (2005); *State ex rel. W. Va. Dep't of Human Servs. v. Cheryl M.*, 177 W. Va. 688, 689 n.1, 356 S.E.2d 181, 182 n.1 (1987).

[2]There was no contemporaneous objection made at trial to the closing argument.

(2010), and distribution and display of obscene matter to a minor, West Virginia Code § 61-8A-2(a) (2010). Both offenses were alleged to have occurred on December 4-5, 2010, at a time when the petitioner was caring for the victim, S.W., and her sister. The factual underpinning for the charges was that the petitioner, with S.W. present and observing, went into his bedroom and masturbated to ejaculation while watching a pornographic film on his television set. The petitioner's defense, boiled down to its essence, was that although the child was in the bedroom while these acts took place, the petitioner didn't intend for her to see what he was doing.

The investigation that led to the charges against the petitioner began after S.W. reported to her mother that "Uncle Jason" had "showed me his tail." Thereafter, Trooper Adam Scott spoke with S.W.'s mother, conducted a forensic interview of the child, and took a statement from the petitioner. Trooper Scott's interrogation technique included confronting the petitioner with information allegedly given to him by S.W. – whether true or not – to test his initial protestations of innocence. Ultimately, the petitioner admitted to Trooper Scott that he had masturbated in his bedroom while watching a pornographic film, but that he didn't realize S.W. was present, or, alternatively, that S.W. was positioned in such a way that she could not have seen either the masturbation or the pornography. Significantly, although the petitioner maintained that he never intentionally exposed himself to the child, he admitted that she had probably seen him and that's why he asked her "not to tell."

2

During the discovery phase of the criminal proceedings, S.W. was evaluated by a psychologist to determine her competency to testify. Based on the psychologist's report, and after a full evidentiary hearing at which the psychologist testified, the circuit court held that

> as a matter of law, the Court finds that S.W. the alleged victim in this matter is not competent to testify, and does GRANT the defendant's motion to preclude said minor child's testimony and all testimony regarding the statements of said minor child in this matter. The Court's finding is based on the conclusion that because of the age of the child the probative value is outweighed by the prejudicial effect of her testimony and statements to the defendant (sic) in this proceeding.

During the trial, the issue of S.W.'s out-of-court statements came up in three different contexts. First, S.W.'s mother was permitted to testify as to the child's disclosure to her of the incident, *see* text *supra*. The circuit court deemed this testimony admissible because it was offered not for the truth of the child's statement, but to show how and why the criminal investigation began. Second, Trooper Scott was permitted to play a tape recorded interview of the petitioner, during the course of which interview the trooper referred several times to information that S.W. had allegedly given him. The court deemed this testimony admissible because it was offered not for the truth of the child's statements, but to illustrate the officer's investigative technique, and to give context to the petitioner's answers to the officer's questions. Third, Stacy Miller, a Child Protective Services worker, was permitted to reiterate the child's statement to her mother; further, she testified that in a search of the petitioner's home, she and Trooper Scott found "[l]otions that the child had referenced." The court deemed the former testimony admissible because it was offered not for the truth of the child's

3

statement, but to show how and why CPS became involved in the case. With respect to the latter testimony, the court instructed the witness: "Just don't reference what was told to you by the child since she will not be testifying. Leave her out of it. Just say what you saw."

With respect to the testimony of all three of these witnesses, the circuit court specifically admonished the jury that S.W.'s statements were not being offered for the truth of what the child had said. Following the testimony of S.W.'s mother, the court instructed the jury that

> [t]his child is five years old. She won't testify. She's not old enough to testify, or mature enough to testify, which is not uncommon. This comment that she made to her mother is not offered for the truth of that matter. It's not offered to prove that it actually happened. It's just offered to you for your consideration to kind of show you how this investigation got started. Okay? Not that the child's statements were true, but rather those statements to her mother are what started the investigation.

During the testimony of Trooper Scott, the court instructed the jury that

> [t]he Court has previously determined as a matter of law that this [tape recorded statement of the petitioner's interview] is admissible for your consideration. Let me mention one thing also. The trooper has talked about his interview techniques. I don't know whether you've seen *Law and Order* on TV or that sort of thing, but sometimes when troopers ask questions of suspects, they don't always – the troopers don't always tell the truth. They may sometimes use techniques in which they lie to the suspect to try to trick them and that sort of thing. I don't know whether that happens in this case. I haven't seen this transcript and I haven't heard the interview. But the trooper may refer to things that he may in his conversation with Mr. Lambert [sic], he may mention things that he says the child said

4

to him, this four-year-old child that I've determined cannot testify. What he says the child said to him, what the trooper says the child said to him, may or may not be true. And it's not being offered for that truth. Just like yesterday when I told you, I think Ms. Kragenbrink testified to what the child told her, and I told you that you couldn't consider that statement for the truth of the statement of the child, it's the same thing with what Trooper Scott says to Mr. Lambert. What Trooper Scott says the child said to him isn't being offered for the truth of those statements, but rather that's the technique employed by Trooper Scott in getting responses from Mr. Lambert. All right? So if you would please view those statements of Trooper Scott in the CD with caution. Ms. Hawkins, go ahead.

During the testimony of the CPS worker, the court instructed the jury that "[l]et me give the jury the same cautionary instruction that I did before. That testimony by Ms. Miller is not offered for the truth of those reports, but rather to demonstrate what caused the investigation by CPS."

At the conclusion of the trial, the jury found the petitioner guilty on both charges. The circuit court denied the petitioner's Motion for Judgment of Acquittal or in the Alternative a New Trial, and on May 11, 2012, sentenced him to a ten to twenty year term of imprisonment on the sexual abuse charge, to be served concurrent with a five year term of imprisonment on the display of pornography to a minor charge. This appeal followed.

## II.  STANDARD OF REVIEW

In this case, we are initially called upon to address a challenge to the admission of evidence by the trial court. As a general matter, we have held that "'[r]ulings on the

5

admissibility of evidence are largely within a trial court's sound discretion and should not be disturbed unless there has been an abuse of discretion.' *State v. Louk*, 171 W. Va. 639, 301 S.E.2d 596, 599 (1983)." Syl. Pt. 2, *State v. Peyatt*, 173 W. Va. 317, 315 S.E.2d 574 (1983). However, the admissibility issue raised in this case is challenged on constitutional grounds. As framed, the issue presents a question of law. This Court has held that "[w]e review questions of law *de novo*." *May v. May*, 214 W. Va. 394, 398, 589 S.E.2d 536, 540 (2003); *see also State v. Whitt*, 220 W. Va. 685, 690, 649 S.E.2d 258, 263 (2007) ("Our review of the constitutional issue raised in this case is plenary."); *United States v. Powers*, 500 F.3d 500, 505 (6th Cir. 2007) ("Generally, we review alleged violations of the Confrontation Clause de novo." (citation omitted)).

With respect to the petitioner's claim that the State's closing argument was improper, this Court has held that

> In reviewing allegedly improper comments made by a prosecutor during closing argument, we are mindful that '[c]ounsel necessarily have great latitude in the argument of a case,' *State v. Clifford*, 58 W. Va. 681, 687, 52 S.E. 864, 866 (1906) (citation omitted), and that "[u]ndue restriction should not be placed on a prosecuting attorney in his argument to the jury.' *State v. Davis*, 139 W. Va. 645, 653, 81 S.E.2d 95, 101 (1954), *overruled, in part, on other grounds, State v. Bragg*, 140 W. Va. 585, 87 S.E.2d 689 (1955). Accordingly, "[t]he discretion of the trial court in ruling on the propriety of argument by counsel before the jury will not be interfered with by the appellate court, unless it appears that the rights of the complaining party have been prejudiced, or that manifest injustice resulted therefrom.' Syllabus Point 3, *State v. Boggs*, 103 W. Va. 641, 138 S.E. 321 (1927).

6

*State v. Messer*, 223 W. Va. 197, 203, 672 S.E.2d 333, 339 (2008) (citing *State v. Graham*, 208 W. Va. 463, 468, 541 S.E.2d 341, 346 (2000)).

## III.   DISCUSSION

### A.   Confrontation Clause Challenge

The petitioner claims that admission of the out-of-court statements of the victim, one of which was recounted verbatim by S.W.'s mother and the others which could be inferred[3] from Trooper Scott's interrogation of the petitioner and the testimony of Stacy Miller, violated his right to confront the witnesses against him.  U.S. Const. amend. VI; W. Va. Const., art. III, § 14.

> 'Pursuant to *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the Confrontation Clause contained within the Sixth Amendment to *the United States Constitution* and Section 14 of Article III of the *West Virginia Constitution* bars the admission of a testimonial statement by a witness who does not appear at trial, unless the witness is unavailable to testify and the accused had a prior opportunity to cross-examine the witness.'  Syllabus Point 6, *State v. Mechling*, 219 W. Va. 366, 633 S.E.2d 311 (2006).

Syl. Pt. 1, *State v. Jessica Jane M.*, 226 W. Va. 242, 700 S.E.2d 302 (2010).  In this regard, it has been established that only hearsay statements fall within the prohibition of the *Crawford/Mechling* rule.  *See State v. Waldron*, 228 W. Va. 577, 581, 723 S.E.2d 402, 406

---

[3]*See* text *infra*.  Trooper Scott intimated to the petitioner during questioning – whether true or not –  that information about the offense had been given to him by S.W., and Ms. Miller let it be known that S.W. had said something to her about the petitioner's use of lotion.

(2012) (holding that "[i]t is important to emphasize again that, aside from the testimonial versus nontestimonial issue, a crucial aspect of *Crawford* is that it only covers hearsay, *i.e.*, out-of-court statements 'offered in evidence to prove the truth of the matter asserted.'" (quoting *United States v. Tolliver*, 454 F.3d 660, 665-66 (7th Cir. 2006), *cert. denied*, 549 U.S. 1149 (2007)).  Mindful of this authority, we turn to the specific statements at issue in this case.

The statement made by S.W. to her mother, that "Uncle Jason" had "showed me his tail," was not hearsay, as it was offered "not to prove the truth of the matter asserted, but to explain why [the mother] took [S.W.] to [the authorities]."  *State v. Edward Charles L.*, 183 W. Va. 641, 657, 398 S.E.2d 123, 139 (1990); *see also State v. James B., Sr.*, 204 W. Va. 48, 52-54, 511 S.E.2d 459, 463-65 (1998); *Jessica Jane M.*, 226 W. Va. at 248-49, 700 S.E.2d at 308-09; *State v. Simmons*, No. 35540, slip op. at 4  (W. Va. filed Feb. 11, 2011) ("The mother's testimony describes what her daughter told her, which was the explanation as to why she called her pastor and took A.M. to the hospital.  The child's statement was the impetus for the mother's actions.").

Clearly, under our case law there is no *Crawford/Mechling* question presented with respect to the statement made by S.W. to her mother, and the statement, not being offered to prove the truth of the matter asserted, was properly admitted at the petitioner's trial.

8

The statements of the child fairly inferrable from Trooper Scott's interrogation of the petitioner are likewise not hearsay as they were not introduced at trial to prove the truth of the matters therein. Trooper Scott testified as follows:

> Q:  You're allowed to lie during these interviews, aren't you?
>
> A:  We're allowed to what we call bluff. We may bluff about evidence we may or may not have. We're allowed to talk about polygraph examinations and the possibility of a person taking it and how he would come out upon that. And we are constitutionally, and it's been deemed in the supreme court, valid uses of interrogation to sometimes present a false statement, yes.
>
> Q:  Well, this bluff, that means you can lie, doesn't it?
>
> A:  Sure.
>
> Q:  Tell them false information?
>
> A:  Yes.
>
> Q:   And in fact, you did tell false information to Mr. Lambert, didn't you?
>
> A:  I believe there was a small aspect of it, yes.

Consistent with Trooper Scott's testimony, the circuit court instructed the jury that "[the trooper] may mention things that he says the child said to him . . . . What he says the child said to him, what the trooper says the child said to him, *may or may not be true*." (Emphasis supplied).

In *Waldron*, where the issue was whether the out-of-court statements of an informant,

9

made during a recorded conversation with the defendant, were hearsay, we concluded that they were not, noting that "the informant's statements gave *context* to the Defendant's admissible statements." 228 W. Va. at 583, 723 S.E.2d at 408 (emphasis supplied); *see United States v. Barraza*, 365 Fed.App'x 526, 530 (4th Cir. 2010) (non-testifying informant's statements made in tape recorded conversation with defendant are not hearsay, as "they are offered at trial only to provide context for the defendant's statements and not for the truth of the matter asserted."); *Tolliver*, 454 F.3d at 666 ("In this case, as pointed out by the government, Shye's statements were admissible to put Dunklin's admissions on the tape into context, making the admissions intelligible for the jury. Statements providing context for other admissible statements are not hearsay because they are not offered for their truth.") (internal footnote omitted); *United States v. Walter*, 434 F.3d 30, 35 (1st Cir. 2006) ("*Crawford* . . . does not call into question this Court's precedents holding that statements introduced solely to place a defendant's admissions into context are not hearsay, and as such, do not run afoul of the Confrontation Clause."); *Restivo v. Lattimore*, No. SA CV 08-1028-MMM(E), 2010 WL 5563893, at *9 (C.D.Cal. Sept. 7, 2010) ("Ochoa's alleged statements were not introduced for the truth of the matters asserted. Rather, the court allowed the jury to hear Detective McShane's assertions concerning Ochoa's alleged statements for the sole purpose of giving context to Petitioner's interview statements."); *State v. Roque*, 141 P.3d 368, 388 (Ariz. 2006) (en banc) ("In this case, however, there was no evidence presented that Dawn actually made the statements that the detectives used in questioning Roque . . . . [b]ecause the statements allegedly made by Dawn were never introduced for their truth, they

were not testimonial hearsay statements barred by the Confrontation Clause.").

In a case closely on point factually with the instant case, *Estes v. State*, 249 P.3d 313 (Alaska Ct. App. 2011), the defendant, Estes, objected to admission of her statement given to state troopers on the ground that during the interrogation, the "troopers referred to out-of-court statements purportedly made by Estes' husband, Deremer . . . admitt[ing] his guilt of the murder, but . . . also incriminat[ing] Estes." *Id*. at 315.  The Court of Appeals of Alaska held that the introduction of this evidence did not violate the Confrontation Clause because

> the State did not offer this evidence as proof of the matters asserted in the statements attributed to Deremer.  Rather . . . the troopers' assertions about what Deremer said, were offered to provide the foundation or context for understanding the statements *Estes* made when she *responded* to these assertions about what Deremer purportedly said.  As [the trial court] recognized, the probative aspect of this evidence was not that Deremer had said these things (if, in fact, Deremer did say these things).  Rather, the probative aspect of this evidence lay in the fact that Estes *was told* that Deremer had said these things, and in how she responded to these assertions.

*Id*.  The court concluded that

> because the evidence of Deremer's purported out-of-court statements was offered for a non-hearsay purpose, the introduction of that evidence did not implicate Estes's Sixth Amendment right of confrontation.  As the United States Supreme Court explained in *Crawford v. Washington*, the Sixth Amendment's confrontation clause bars evidence that is *both* "testimonial" and "hearsay", but it does not bar testimonial evidence if that evidence is not hearsay:  'The [Confrontation] Clause . . . does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted.' *Crawford*, 541 U.S. at 59 n.9, 124 S.Ct. at 1369.

11

*Estes*, 249 P.3d at 316.

We agree with the reasoning of the *Estes* court, which is consistent with both our case law and also the substantial weight of authority from other jurisdictions. Accordingly, we hold that where the out-of-court statements of a non-testifying individual are introduced into evidence solely to provide foundation or context for understanding a defendant's responses to those statements, the statements are offered for a non-hearsay purpose and the introduction of the evidence does not violate the defendant's rights under *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) and *State v. Mechling*, 219 W. Va. 366, 633 S.E.2d 311 (2006).

In light of the foregoing, we conclude that there is no *Crawford/Mechling* question presented with respect to the child's out-of-court statements which were inferrable from the testimony of Trooper Scott; and those statements, not being offered to prove the truth of the matter asserted, were properly admitted at the petitioner's trial.

The statement made by S.W. to her mother and then reiterated by Stacy Miller, the CPS worker, was offered to explain why CPS was contacted,[4] and was therefore not hearsay.

---

[4]The circuit court specifically instructed the jury "[t]hat testimony by Ms. Miller is not offered for the truth of those reports, but rather to demonstrate what caused the investigation by CPS."

(continued...)

12

*See* text *supra*. Ms. Miller's testimony that during Trooper Scott's search of the petitioner's home he found "[l]otions that the child had referenced[,]" is more problematic, because it served to tell the jury both that the petitioner had used lotions as an aid to masturbation and that this information came from S.W.[5] The circuit court was obviously concerned about this testimony and took prompt action to curtail further problems, instructing the witness: "Just don't reference what was told to you by the child since she will not be testifying. Leave her out of it. Just say what you saw." Thereafter, Ms. Miller made no further references to anything that S.W. had said.

Under these circumstances, and upon a full review of the record, this Court concludes that even if the reference to S.W.'s out-of-court statement about lotion was error under *Crawford /Mechling*, any error was harmless beyond a reasonable doubt. "Errors involving deprivation of constitutional rights will be regarded as harmless only if there is no reasonable possibility that the violation contributed to the conviction." Syl. Pt. 20, *State v. Thomas*, 157 W. Va. 640, 203 S.E.2d 445 (1974); *see also State v. Kelley*, 192 W. Va. 124, 130, 451 S.E.2d 425, 431 (1994). In this case, the statement was a fleeting reference in a trial otherwise free of error. In his statement to Trooper Scott, the petitioner admitted all of the

---

[4](...continued)

[5]Neither the prosecutor at trial, nor the State on appeal, put forward a non-hearsay rationale to support admission of this statement.

factual allegations underpinning the charges against him; his defense was that he didn't *intend* for the child to see him masturbate and didn't *intend* for the child to see the pornographic movie. Thus, the fact that S.W. may have mentioned lotion at some point to Stacy Miller was negligible in light of the totality of the evidence against the petitioner. The circuit court admonished the witness, and the witness complied by thereafter "leav[ing S.W.] out of it."

### B.  The State's Closing Argument

The petitioner alleges that certain comments made by the State in its rebuttal closing argument were prejudicial; that they were an attempt to bolster the credibility of S.W., who had not testified at trial; and that they infected the integrity of the proceedings and denied the petitioner due process of law, such as to require reversal under the plain error doctrine.

Upon careful review of the record, this Court deems it unnecessary to reach the issue of plain error, because the comments complained of, even if error, were invited. In this regard, it is well established in our case law that "'"[a] judgment will not be reversed for any error in the record introduced by or invited by the party seeking reversal." Syl. Pt. 21, *State v. Riley*, 151 W. Va. 364, 151 S.E.2d 308 (1966).' Syllabus point 4, *State v. Johnson*, 197 W. Va. 575, 476 S.E.2d 522 (1996)." Syl. Pt. 4, *State v. Mann*, 205 W. Va. 303, 518 S.E.2d 60 (1999). As Justice Cleckley explained in *State v. Crabtree*, 198 W. Va. 620, 482 S.E.2d 605 (1996),

'Invited error' is a cardinal rule of appellate review applied to a wide range of conduct. It is a branch of the doctrine of waiver which prevents a party from inducing an inappropriate or erroneous response and then later seeking to profit from that error. The idea of invited error is not to make the evidence admissible but to protect principles underlying notions of judicial economy and integrity by allocating appropriate responsibility for the inducement of error. Having induced an error, a party in a normal case may not at a later stage of the trial use the error to set aside its immediate and adverse consequences.

*Id*. at 627, 482 S.E.2d at 612.

With these principles in mind, we turn to the petitioner's argument that the State's closing argument was improper and prejudicial. The relevant portion of the State's rebuttal argument is as follows:

The child's not being credible is not the same as the child not being competent. I wish, oh how I wish you could have heard her talk or met her or seen her. But she's four. And you have to reach a certain developmental level to be a witness in a trial . . . But when you're four you're just not old enough to be able to be a witness in court. That doesn't mean she wasn't telling the truth, that she's a liar or anything like that. She didn't have any reason to make up these allegations against Jason Lambert. She had nothing to gain.

Not mentioned by the petitioner is the fact that these comments were made in direct response to defense counsel's closing argument, in which counsel stated that

[t]he only professional who interviewed this child was the forensic clinical psychologist whose report and testimony resulted in the Court's determination that the child was not competent to testify, because she lacked the ability to know the difference between telling the truth and a lie. That she did not

15

have the ability to understand the importance and duty to tell the truth. Because she did not have the capacity to observe, remember, and relate events accurately.

Defense counsel's comments were both a mischaracterization of the psychologist's report[6] – which was not, in any event, before the jury – and also a mischaracterization of the circuit court's basis for deeming S.W. to be incompetent to testify. In the court's order of November 17, 2011, the court's conclusion that the child was incompetent was "based on the conclusion that because of the age of the child the probative value is outweighed by the prejudicial effect of her testimony and statements to the defendant in this proceeding." This was completely consistent with the court's instruction to the jury that "[t]his child is five years old. She won't testify. She's not old enough to testify, or mature enough to testify, which is not uncommon."

Under these circumstances, it is apparent that the petitioner's complaint falls squarely within the invited error doctrine. "'An appellant or plaintiff in error will not be permitted to complain of error in the admission of evidence which he offered or elicited, and this is true even of a defendant in a criminal case.' Syl. Pt. 2, *State v. Bowman*, 155 W. Va. 562, 184

---

[6]The psychologist who examined S.W. opined that she had the ability, albeit marginal, to distinguish between telling the truth and a lie, and that he was "leaning" toward finding her competent after his first interview. After his second interview, he deemed the child to be incompetent based primarily on her inability to consistently recall details about a recent trip to Florida.

S.E.2d 314 (1971)." Syl. Pt. 3, *Crabtree*, 198 W. Va. at 623, 482 S.E.2d at 608; *see State v.*

*Flippo*, 212 W. Va. 560, 588 n.44, 575 S.E.2d 170, 198 n.44 (2002); *Mann*, 205 W. Va. at

312-13, 518 S.E.2d at 69-70. Here, the petitioner's counsel argued to the jury, in misleading

fashion and based upon evidence not before the jury, that the reason S.W. had been deemed

incompetent was because she was a liar. The State responded, reasonably in our view, that

because the child was too young to take the witness stand, that "doesn't mean she wasn't

telling the truth, that she's a liar or anything like that."[7]

Finally, we note that even if we were to view the State's closing argument as error,

we would not reverse this case on that ground. "A judgment of conviction will not be set

aside because of improper remarks made by a prosecuting attorney to a jury which do not

clearly prejudice the accused or result in manifest injustice." Syl. Pt. 5, *State v. Sugg*, 193

W. Va. 388, 456 S.E.2d 469 (1995). Further,

> [f]our factors are taken into account in determining whether
> improper prosecutorial comment is so damaging as to require
> reversal: (1) the degree to which the prosecutor's remarks have
> a tendency to mislead the jury and to prejudice the accused; (2)
> whether the remarks were isolated or extensive; (3) absent the
> remarks, the strength of competent proof introduced to establish

---

[7]There is an exception to the invited error doctrine "when application of the rule would result in a manifest injustice[,]" *Crabtree*, 198 W. Va. at 628, 482 S.E.2d at 613, and where application of the exception to the rule "'is necessary to preserve the integrity of the judicial process or to prevent a miscarriage of justice.'" *Id*. (citing *Wilson v. Lindler*, 995 F.2d 1256, 1262 (4th Cir. 1993)). As clearly demonstrated by the facts herein, *see* text *supra*, this case does not fall within the exception to the rule.

the guilt of the accused; and (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters.

Syl. Pt. 6, *Sugg*, 193 W. Va. at 393, 456 S.E.2d at 474. The ultimate test "is whether the remarks 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.* at 405, 456 S.E.2d at 486 (citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

In the instant case, the petitioner fails to meet any of the factors set forth in *Sugg*. The prosecutor's remarks did not have a tendency to mislead or prejudice the jury; to the contrary, they were intended to rebut an argument made by defense counsel that *did* have a tendency to mislead the jury. The remarks were isolated, and were offset by the circuit court's repeated instructions to the jury that any statements made by S.W. to her mother, the trooper or the CPS worker were not introduced for the truth of the matter. Absent the remarks in the prosecutor's rebuttal closing argument, the State's evidence against the petitioner was strong; that evidence included, inter alia, the petitioner's admissions that he had masturbated and watched a pornographic video while the child was "probably" in the room, and pictures of the room demonstrating that the petitioner could not have been unaware of the child's presence and that the child could not have been shielded from seeing what the petitioner was doing. Finally, the remarks were not made to divert the jury's attention with extraneous matters; again, the petitioner's counsel invited the remarks by telling the jury that S.W. had been deemed incompetent because she didn't tell the truth – a

18

misrepresentation of the psychologist's report, which was not in any event in evidence at trial.

In short, there was no manifest injustice that would require this Court to reverse the petitioner's conviction. The petitioner had a fair trial and his conviction will stand.

## IV.  Conclusion

The judgment of the Circuit Court of Marion County, West Virginia, is affirmed.

Affirmed.