# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**State of West Virginia, Plaintiff Below,
Respondent**

**vs) No. 12-1386** (Harrison County 10-F-23)

**William Echard II, Defendant Below,
Petitioner**

**FILED**

November 26, 2013
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner William Echard II's appeal, by counsel Matthew Brummond, arises from the Circuit Court of Harrison County's October 2, 2012 order resentencing him to a term of incarceration of forty years for the death of a child by a parent; a term of incarceration of two to ten years for each of the four counts of child abuse resulting in injury; and a term of incarceration of one to three years for each of the three counts of child neglect resulting in injury. Petitioner's sentences were to be served consecutively. The State, by counsel Laura Young, filed a response, to which petitioner replied.[1]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming is appropriate under Rule 21 of the Rules of Appellate Procedure.

On July 15, 2009, petitioner, his girlfriend Amber M., and a houseguest drank and watched movies late into the night at petitioner's parents' house. Petitioner and Ms. M. were the biological parents of the infant victim. At approximately 10:30 a.m. on July 16, 2009, petitioner's parents noticed that the couple's infant was behaving abnormally and woke petitioner and Ms. M., then called 911. The infant was transported to the local hospital but after further examination the medical staff contacted the police and determined it was necessary to life-flight the infant to Ruby Memorial Hospital in Morgantown, West Virginia. The infant died as a result of a blunt force head injury.

---

[1]Because this matter concerns infant children, we follow our traditional practice in cases involving sensitive facts and use only the parties' initials. *See State v. Edward Charles L.*, 183 W.Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990).

After arriving at Ruby Memorial and speaking with the treating physicians, Detective Pat McCarthy initially interviewed Ms. M. Thereafter, Detective McCarthy continued his investigation and interviewed petitioner. After Detective McCarthy challenged petitioner's original story, petitioner confessed that he shook the baby at 5:30 a.m. that morning, and that, sometime in the past, he accidently dropped the baby while trying to break up a fight between a cat and a dog, may have bruised the baby's face by squeezing her too hard, and may have hurt the baby's ribs by squeezing her too hard at his sister's birthday party.[2] Detective McCarthy's interrogation technique included confronting petitioner with information allegedly given to him by Ms. M. to test petitioner's initial claim of innocence.

Petitioner was indicted by a Harrison County Grand Jury in January of 2010 on one count of murder of a child by a parent in violation of West Virginia Code § 61-8D-2(b), one count of death of a child by a parent in violation of West Virginia Code § 61-8D-2a, six counts of child abuse resulting in injury in violation of West Virginia Code § 61-8D-3(b), three counts of child neglect resulting in injury in violation of West Virginia Code § 61-8D-4(a), and one count of presentation of false information regarding child's injuries in violation of West Virginia Code § 61-8D-7. Following a three-day jury trial, petitioner was convicted of one count of death of a child by a parent, four counts of child abuse resulting in injury, and three counts of child neglect resulting in injury. The jury acquitted petitioner of the remaining counts. The circuit court imposed consecutive sentences as described above. In October of 2012, the circuit court re-sentenced petitioner.[3] It is from this order that petitioner appeals.

Petitioner challenges the admission of Detective McCarthy's testimony at trial. "'A trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard.' Syl. Pt. 4, *State v. Rodoussakis*, 204 W.Va. 58, 511 S.E.2d 469 (1998)." Syl. Pt. 2, *State v. Meadows*, 231 W.Va. 10, 743 S.E.2d 318 (2013). Petitioner's argument challenging the admissibility of Detective McCarthy's testimony is based in part on constitutional grounds and presents a question of law. This Court has held that "[w]e review questions of law *de novo*." Syl. Pt. 1, in part, *May v. May*, 214 W.Va. 394, 589 S.E.2d 536 (2003).

On appeal, petitioner argues that it was plain error for Detective McCarthy to testify that Ms. M. implicated petitioner during her interrogation, because Ms. M. was not unavailable to testify and petitioner did not have an opportunity to cross-examine her as required by the Confrontation Clauses of the United States and West Virginia Constitutions.

Petitioner has conceded that this issue must be reviewed for plain error because trial counsel did not object to the detective's testimony. "To trigger application of the 'plain error'

---

[2]These individual and distinct injuries were sustained months apart.

[3]Petitioner did not file a notice of appeal in the requisite time, but filed a motion to resentence for purposes of appeal, which the circuit court denied. Petitioner appealed the circuit court's order to this Court. By order entered on May 29, 2012, this Court reversed and remanded petitioner's appeal and directed the circuit court to re-sentence petitioner so that he could pursue a direct appeal. *State v. William Echard II*, No. 11-1047, 2012 WL 3104251 (W.Va. Supreme Court, May 29, 2012) (memorandum decision).

2

doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Syl. Pt. 7, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995). Petitioner argues that the admission of the out-of-court statement of Ms. M. implicating him violated his Sixth Amendment right to confront a witness against him and that it was plain error because the parties and the trial court knew or should have known that it is impermissible to introduce testimonial hearsay of a witness who is available and whom petitioner has not had the opportunity to cross-examine. For the reasons set forth below, we conclude there was no plain error.

We are asked to determine whether the Confrontation Clause of either the United States or the West Virginia Constitution was violated.

> "Pursuant to *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the Confrontation Clause contained within the Sixth Amendment to the *United States Constitution* and Section 14 of Article III of the *West Virginia Constitution* bars the admission of a testimonial statement by a witness who does not appear at trial, unless the witness is unavailable to testify and the accused had a prior opportunity to cross-examine the witness." Syllabus Point 6, *State v. Mechling*, 219 W.Va. 366, 633 S.E.2d 311 (2006). Syl. Pt. 1, *State v. Jessica Jane M.*, 226 W.Va. 242, 700 S.E.2d 302 (2010).

Syl. Pt. 3, *State v. Lambert*, No. 12-1066, 2013 WL 5814136 (W.Va. Oct. 25, 2013). "[I]t has been established that only hearsay statements fall within the prohibition of the *Crawford/Mechling* rule." *Id* at --, -- S.E.2d at --. See *State v. Waldron*, 228 W.Va. 577, 581, 723 S.E.2d. 402, 406 (2012) (holding that "[i]t is important to emphasize that, aside from the testimonial versus nontestimonial issue, a crucial aspect of *Crawford* is that it only covers hearsay, i.e., out-of-court statements 'offered in evidence to prove the truth of the matter asserted.'") Thus, unless Detective McCarthy's testimony conveyed hearsay evidence, there cannot have been a Confrontation Clause violation. To begin, we must determine if Detective McCarthy's statement was hearsay and prohibited by the *Crawford/Mechling* rule.

The Court recently held that:

> where the out-of-court statements of a non-testifying individual are introduced into evidence solely to provide foundation or context for understanding a defendant's responses to those statements, the statements are offered for a non-hearsay purpose and the introduction of the evidence does not violate the defendant's rights under *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.E.2d 177 (2004) and *State v. Mechling*, 219 W.Va. 366, 633 S.E.2d 311 (2006).

Syl. Pt. 4, *State v. Lambert,* No. 12-1066, 2013 WL 5814136 (W.Va. Oct. 25, 2013). Detective McCarthy testified that petitioner was given no less than four opportunities to tell his story, and the detective told the jury how petitioner's version of events changed as the detective informed petitioner he had learned certain facts. The relevant portion of that testimony was:

3

Q:    Okay. So you went through [petitioner's initial] version [of the events preceding the infant's death]; is that correct?

A:    That's correct.

Q:    What - - when you heard - - when you had completed that, what did you tell him?

A:    That I have some serious questions about that because of some of the other information I had obtained [about the events preceding the infant's death].
. . .

Q:    Okay. And after he had went [sic] through his version of events [preceding the infant's death] again, what did you say to him?

A:    I, again, stated to him that I know that the child -- the doctors tell me that the child couldn't have been normal. There was an abuse of that child sometime at that period; and that Mrs. [M.] had told me differently. And, again, I get the same basic surprise, oh, like aawwhh. And this very weak denial of anything happening at that point.

Q:    Okay. Did you give [petitioner] another opportunity to recite what happened?

A:    *Yes, after I explained to him that M[]s. M.[] had told me that she had witnessed him shaking the child at five thirty violently*, he agreed that he had done that at five thirty and that it was because the child wouldn't stop crying. And then he had put the child down and went back to sleep; and nothing had happened until eleven when he had been awakened. (Emphasis added.)

Detective McCarthy's statement was not offered to prove what Ms. M. said or witnessed. The statement was introduced to explain Detective McCarthy's interrogation process and to explain why petitioner recanted his original claim of innocence and confessed to violently shaking the baby. Because Ms. M.'s out-of-court statement was not offered to prove the truth of the matter asserted, it was appropriately admitted. For this reason, we conclude that the introduction of Detective McCarthy's testimony did not present hearsay testimony and did not violate petitioner's rights pursuant to *Crawford* or *Mechling*.

For the foregoing reasons, we affirm.

Affirmed.

4

**ISSUED:**  November 26, 2013


**CONCURRED IN BY:**

Chief Justice Brent D. Benjamin
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II